**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| | ) | CASE NO. 1:25-CV-1874 |
| ***In re Union Home Mortgage Corp. Data Breach Litigation*** | ) | |
| | ) | JUDGE OLIVER |
| | ) | |
| | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF DEFENDANT UNION HOME MORTGAGE CORP.'S MOTION TO DISMISS** |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 4

A. Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) Because They Do Not Have Article III Standing to Sue in Federal Court ..... 4

1. The Complaint Cannot Withstand a Facial Challenge to Plaintiffs' Standing ..... 5

a. The Complaint Does Not Adequately Allege that Plaintiffs' Non-Public Personal Information Was Affected by the Data Breach ..... 6

b. Plaintiffs' Alleged Harms are Not an Injury-in-Fact ..... 7

c. Plaintiffs Have Not Alleged Facts Sufficient to Establish a Material Risk of Imminent Future Harm ..... 10

d. Plaintiffs' Injuries are Not Fairly Traceable to the Data Breach ..... 11

e. Plaintiffs Do Not Have Standing To Seek Injunctive Relief ..... 13

2. Plaintiffs' Complaint Cannot Withstand a Factual Challenge Pursuant to Fed. R. Civ. P. 12(b)(1) ..... 14

B. Plaintiffs' Complaint Should be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Upon Which Relief Can be Granted ..... 16

1. Negligence ..... 16

a. Plaintiffs Fail to Allege that UHM Owed Them a Duty of Care ..... 17

b. Plaintiffs' Conclusory Allegations of Breach of a Duty are Insufficient ..... 19

c. Plaintiffs Fail to Allege a Cognizable Injury Caused by the Data Breach ..... 19

2. Breach of Implied Contract ........ 21

3. Unjust Enrichment ........ 22

4. California Consumer Privacy Act (CCPA) ........ 25

5. Plaintiffs' Allegations are Insufficient to Permit Declaratory or Injunctive Relief ........ 27

6. North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") ........ 29

IV. CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
790 F.3d 641 (6th Cir. 2015) ....................................................................................4

*Allen v. Anderson Windows, Inc.*,
913 F. Supp. 2d 490 (S.D. Ohio 2012) ....................................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................16, 19, 24

*Bailey v. United States*,
115 F. Supp. 3d 882 (N.D. Ohio 2015)......................................................................18

*Bednyak v. Fin. Risk Mitigation, Inc.*,
739 F. Supp. 3d 353 (E.D. La. 2024)........................................................................9

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*,
373 F.3d 807 (6th Cir. 2004) ....................................................................................27

*In re Bon Secours Mercy Health Data Breach Litig.*,
No. 1:24-CV-594, 2025 WL 1827804 (S.D. Ohio July 2, 2025)...............................13

*Brickman v. Maximus, Inc.*,
No. 2:21-cv-3822, 2022 WL 16836186 (S.D. Ohio May 2, 2022)............................17

*Brooks v. Peoples Bank*,
732 F. Supp. 3d 765 (S.D. Ohio 2024) ..............................................................13, 17, 25

*Brown v. Whirlpool Corp.*,
996 F. Supp. 2d 623 (N.D. Ohio 2014)......................................................................16

*Burger v. Healthcare Mgmt. Sols., LLC*,
No. CV RDB-23-1215, 2024 WL 473735 (D. Md. Feb. 7, 2024).......................10, 13

*Busacca v. Excavating, Bldg. Material & Const. Drivers Union Loc. 436 Welfare Fund Bd. of Trs.*,
953 F. Supp. 867 (N.D. Ohio 1996)...........................................................................5

*Business Cabling, Inc. v. Yokeley*,
182 N.C. App. 657 (2007) .........................................................................................29

*Casden v. Burns*,
306 F. App'x 966 (6th Cir. 2009) .............................................................................16

*In re CBIZ Data Breach Litig.*,
No. 1:24 CV 1722, 2025 WL 1557033 (N.D. Ohio June 2, 2025)....................................18

*Chen v. JPMorgan Chase Bank, N.A.*,
745 F. Supp. 3d 1025 (C.D. Cal. 2024) ..............................................................26

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................................................10

*Cleveland Central Catholic High Sch. v. Mills*,
125 N.E.3d 328 (Ohio Ct. App. 2018)...................................................................22

*Cliffs Sales Co. v. Am. Steamship Co.*,
No. 1:07 CV 1466, 2008 WL 3852138 (N.D. Ohio Aug. 18, 2008) ..............................28

*Cooney v. Chi. Pub. Schs.*,
943 N.E.2d 23 (Ill. App. Ct. 2010) .......................................................................18

*Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,
835 N.E.2d 701 (Ohio 2005)...............................................................................20

*Craighead v. E.F. Hutton & Co.*,
899 F.2d 485 (6th Cir. 1990) ...............................................................................16

*Curtis B. Pearson Music Co. v. Everitt*,
368 F. App'x 450 (4th Cir. 2010) .........................................................................29

*Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*,
2022-NCCOA-27, 281 N.C. App. 312 ...................................................................30

*Davis v. United States*,
499 F.3d 590 (6th Cir. 2007) ..............................................................................4, 27

*Doe v. Mission Essential Grp., LLC*,
No. 2:23-CV-3365, 2024 WL 3877530 (S.D. Ohio Aug. 20, 2024), *appeal dismissed*, No. 24-3815, 2024 WL 5165129 (6th Cir. Dec. 2, 2024) ........................6, 8, 10, 13

*Dolmage v. Combined Ins. Co. of Am.*,
14-C-3809, 2015 WL 292947 (N.D. Ill. Jan. 21, 2015).............................................18

*Dooley v. Wells Fargo Bank, Nat. Ass'n*,
941 F. Supp. 2d 862 (S.D. Ohio 2013) ..................................................................21

*Duqum v. Scottrade, Inc.*,
No. 4:15-CV-1537-SPM, 2016 WL 3683001 (E.D. Mo. July 12, 2016), *aff'd sub nom. Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017)...........................................8

*Farber v. Athena of SC, LLC*,
No. 3:23-CV-214-KAC-JEM, 2024 WL 2703882 (E.D. Tenn. Mar. 12, 2024)........................9

*In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*,
217 N.C. App. 199 (2011) ........................................................................................29

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
No. 1:20CV235, 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) ............................................5

*Foster v. Health Recovery Servs., Inc.*,
493 F. Supp. 3d 622 (S.D. Ohio 2020) ......................................................................20

*Freelon v. GRG Farms, Inc.*,
2024-Ohio-4764, 254 N.E.3d 749.............................................................................22

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) .............................................................................10

*Godwin v. Facebook, Inc.*,
2020-Ohio-4834, 160 N.E.3d 372.............................................................................18

*Haddad v. Maalouf-Masek*,
2024-Ohio-1983 ......................................................................................................23

*Hammond v. The Bank of New York Mellon Corp.*,
08-Civ-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ..........................................18

*Hicks v. PHH Mortg. Corp., Inc.*,
No. 1:23-CV-356, 2023 WL 8455139 7 (S.D. Ohio Dec. 6, 2023), *report and recommendation adopted*, No. 1:23-CV-356, 2024 WL 193653 (S.D. Ohio Jan. 18, 2024)..................................................................................................27

*Hong Sup Kim v. Kee Hoon Lee*,
No. 2:14-CV-00591, 2017 WL 932382 (S.D. Ohio Mar. 9, 2017)......................................22

*Jenkins v. Associated Wholesale Grocers, Inc.*,
No. 24-4039-DDC-GEB, 2025 WL 708574 (D. Kan. Mar. 5, 2025) ...................................29

*Johnson v. Yuma Reg'l Med. Ctr.*,
769 F. Supp. 3d 936 (D. Ariz. 2024) ................................................................ *passim*

*In re Lentz*,
405 B.R. 893 (Bankr. N.D. Ohio 2009) ......................................................................17

*Little v. Louisville Gas & Elec. Co.*,
33 F. Supp. 3d 791 (W.D. Ky. 2014), a*ff'd in part*, 805 F.3d 695 (6th Cir. 2015) ........................................................................................................5

*Los Angeles v. Lyons*,
461 U.S 95 (1983) ....... 13

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....... 11

*Marlin v. Associated Materials, LLC*,
No. 5:23CV1621, 2024 WL 2319115 (N.D. Ohio May 22, 2024) ....... 7, 10, 11, 15

*Masterson v. IMA Fin. Grp., Inc.*,
No. 223CV02223HLTADM, 2023 WL 8647157 (D. Kan. Dec. 14, 2023) ....... 11

*McCombs v. Delta Grp. Elecs., Inc.*,
676 F. Supp. 3d 1064 (D.N.M. 2023) ....... 9

*McGee v. Thornton*,
No. 2013-UP-156, 2013 WL 8507864 (S.C. Ct. App. Apr. 17, 2013) ....... 20

*Meros v. Sunbelt Rentals, Inc.*,
2023-Ohio-4313, 230 N.E.3d 487 ....... 18

*Miller v. Vreba Hoff Dairy Dev., LLC*,
No. 3:07 CV 1359, 2007 WL 4191993 (N.D. Ohio Nov. 21, 2007) ....... 17

*Monopoli v. Mercedes-Benz USA, LLC*,
No. 1:21-CV-01353-SDG, 2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ....... 30

*In re MOVEit Customer Data Sec. Breach Litig.*,
No. 23-MD-3083-ADB-PGL, 2025 WL 2179475 (D. Mass. July 31, 2025) ....... 26

*Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*,
248 F. Supp. 2d 679 (S.D. Ohio 2002) ....... 5

*Norton v. Beasley*,
No. 21-6053, 2022 WL 17348385 (6th Cir. Dec. 1, 2022) ....... 13

*Oliphant v. AWP, Inc.*,
143 N.E.3d 552 (Ohio 2020) ....... 17

*Osborne v. Keeney*,
399 S.W.3d 1 (Ky. 2012) ....... 20

*Polkowski v. Jack Doheny Companies, Inc.*,
No. 2:25-CV-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) ....... 5

*Prows v. City of Oxford, OH*,
No. 23-3920, 2024 WL 4786114 (6th Cir. Sept. 6, 2024), *cert. denied sub nom. Prows v. City of Oxford, Ohio*, 145 S. Ct. 1311 (2025) ....... 8

*Randleman v. Fidelity Nat. Title Ins. Co.*,
465 F. Supp. 2d 812 (N.D. Ohio 2006)....................21

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012)....................11

*Rogers v. Keffer, Inc.*,
243 F. Supp. 3d 650 (E.D.N.C. 2017)....................29

*Rogozinsky v. Danek Med., Inc.*,
No. 4:96CV2572, 1999 WL 33537323 (N.D. Ohio July 8, 1999)....................17

*Rolsen v. Lazarus, Inc.*,
No. C-990588, 2000 WL 1434170 (Ohio Ct. App. Sept. 29, 2000)....................22

*Sasso v. Tesla, Inc.*,
584 F. Supp. 3d 60 (E.D.N.C. 2022)....................30

*Shepherd v. City of Cincinnati*,
860 N.E.2d 808 (Ohio App. 2006)....................17

*Steele v. Nationwide Children's Hosp.*,
No. 2:23-CV-3335, 2024 WL 4303234 (S.D. Ohio Sept. 26, 2024)....................23

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014)....................6, 7

*Tate v. EyeMed Vision Care, LLC*,
No. 1:21-CV-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023).................... *passim*

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................4, 10, 11, 15

*Tucker v. Marietta Area Health Care, Inc.*,
No. 2:22-CV-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023)....................20, 21

*U.S. v. Ritchie*,
15 F.3d 592 (6th Cir. 1994)....................4

*Van Vleck v. Leikin, Ingber, & Winters, P.C.*,
No. 22-1859, 2023 WL 3123696 (6th Cir. Apr. 27, 2023)....................8

*Vasu v. Combi Packaging Sys. LLC*,
No. 5:18-CV-1889, 2020 WL 2733756 (N.D. Ohio May 25, 2020)....................28

*In re Warner Music Grp. Data Breach*,
No. 20 CIV. 7473 (PGG), 2025 WL 2531832 (S.D.N.Y. Sept. 3, 2025)....................26

*In re Waste Mgmt. Data Breach Litig.*,
No. 21CV6147 (DLC), 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)....................................19

*Williams v. Ormsby*,
966 N.E.2d 255 (Ohio 2012)..................................................................................21

*Worix v. MedAssets, Inc.*,
869 F. Supp. 2d 893 (N.D. Ill. 2012) ....................................................................18

*In re Zappos.com, Inc.*,
108 F. Supp. 3d 949 (D. Nev. 2015) .......................................................................8

*Zurich Ins. Co. v. Logitrans, Inc.*,
297 F.3d 528 (6th Cir. 2002) .................................................................................4

**Statutes**

Cal. Civ. Code § 1798.81.5(b) ..............................................................................25

Cal. Civ. Code § 1798.150(b) ...........................................................................25, 26

California Consumer Privacy Act .............................................................1, 25, 26, 27

FTC Act Section 5 ..........................................................................................17, 28

North Carolina Unfair and Deceptive Trade Practices Act .......................................2, 30

*North Carolina Unfair and Deceptive Trade Practices Act* .........................................29

**Other Authorities**

FRCP 8.............................................................................................19, 22, 24

FRCP 9..................................................................................................30

FRCP 9(b) ..............................................................................................30

FRCP 12(b)(1) .....................................................................................3, 4, 14

FRCP 12(b)(6) ........................................................................................3, 16

FRCP 56..................................................................................................4

https://www.governing.com/management-and-administration/61-of-americans-have-had-their-personal-data-breached (last accessed Dec. 16, 2025) .....................................1

https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf ................................................1

## I.    INTRODUCTION

As the world becomes increasingly digital, incidents of data breaches continue to rise.[1] Most Americans have had their personal information accessed without authorization in at least one data breach, and often many more.[2] Even the best cybersecurity measures cannot prevent an intrusion by sophisticated hackers. Yet Plaintiffs allege, in a conclusory fashion, without any well-pleaded factual allegations, that Union Home Mortgage Corp. ("UHM") maintained inadequate security measures and that this inadequacy caused the data breach and Plaintiffs' alleged injuries.

Plaintiffs' Consolidated Class Action Complaint should be dismissed with prejudice, for several reasons.  Plaintiffs' allegations on their face are insufficient to establish Article III standing to sue in federal court.  Separately, Plaintiffs' allegations of injury, and those injuries' traceability to the data breach, are belied by facts showing that **no** data from the breach has been publicized on the "dark web" or elsewhere and is highly unlikely to be, and that much of Plaintiffs' personal information has been compromised in previous breaches and posted on the dark web. The Court may consider these extrinsic facts in determining whether Plaintiffs have standing.

Even if Plaintiffs had standing, they have failed to state a claim under any of the causes of action they bring. Plaintiffs' negligence claim fails to allege facts showing that UHM owed or breached any duty to the Plaintiffs or that they suffered a cognizable injury as a result of the alleged breach. Plaintiffs' breach of implied contract claim fails because Plaintiffs do not allege facts showing that there was a meeting-of-the-minds or consideration. Plaintiffs' unjust enrichment claim fails because Plaintiffs do not allege how Plaintiffs' personal information provided a "benefit" to UHM. The California Consumer Privacy Act ("CCPA") claim fails because the

---

[1] https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf (see p. 18 which shows a three-year complaint count for data breaches) (last accessed Dec. 16, 2025).
[2] https://www.governing.com/management-and-administration/61-of-americans-have-had-their-personal-data-breached (last accessed Dec. 16, 2025).

California Plaintiffs failed to satisfy the CCPA's pre-suit notice requirement, UHM cured the alleged violations, and Plaintiffs do not allege what security measures UHM should have implemented that would have prevented the breach. Sixth, Plaintiffs' claims for declaratory judgment and injunctive relief fail because these are not standalone causes of action but remedies, and because Plaintiffs' have not established that they are entitled to these remedies. Finally, the North Carolina Plaintiff's claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") fails because he does not, and cannot, adequately allege that UHM engaged in an unfair or deceptive act, or that its conduct was egregious or aggravating.

In sum, Plaintiffs' Complaint should be dismissed, with prejudice, in its entirety.

## II.   STATEMENT OF FACTS

On June 25, 2025, UHM discovered that its computer network had been breached. (Exhibit 1, Declaration of Mark Langhans ("Langhans Decl.") ¶ 7.) UHM immediately hired (through outside counsel) a forensic investigative firm, Charles River Associates ("CRA"), to investigate the breach and assist in the response. (*Id.* at ¶ 14.) It was determined that on May 27, 2025, a UHM employee accessed a legitimate third-party business website on which a sophisticated ransomware group (known as "Qilin") had managed to implant malicious software. (*Id.* at ¶ 5.) This software caused the employee's browser to allow a malicious script to install and run malware on the employee's computer. (*Id.* at ¶ 6.)  As part of the breach, Qilin was able to compromise other UHM employees' accounts, install ransomware that encrypted a part of UHM's network, and exfiltrate data, including personal information of some UHM customers, former employees, and others. (*Id.* at ¶ 8.) Qilin then threatened to release the stolen data if UHM did not pay a ransom. (*Id.* at ¶ 9.)

In order to prevent any harm to individuals whose personal information had been stolen, UHM paid the ransom, on the condition that Qilin would securely delete the stolen data and not target UHM again. (*Id.* at ¶ 10.) Qilin agreed to these terms, deleted the stolen data, and provided

logs proving the deletion. (*Id.* at ¶ 11.) UHM has employed a reputable investigative firm to monitor for any signs that UHM's stolen data has been posted on the dark web, where stolen data is typically sold and traded by bad actors; no sign of the UHM data has been detected. (*Id.* at ¶ 14; Exhibit 2, Adam Hart Expert Report ("Hart Rpt.") ¶ 18.)

After discovering and investigating the breach, UHM notified affected individuals, including Plaintiffs, of the breach and provided instruction on how to place a security freeze on their credit report to determine whether any unauthorized credit had been acquired using their personal information. (ECF 12 ("Compl.") ¶ 8, fn. 4.) UHM also offered affected individuals 1 or 2 years of credit monitoring services at no charge. (*Id.*) In addition, UHM implemented additional security measures to buttress its already substantial cybersecurity program. (Langhans Decl. ¶ 12.)

Plaintiff Jedd Rudd first filed suit on September 8, 2025. That case was later consolidated with a number of other similar putative class actions. Plaintiffs filed their Consolidated Complaint on November 3, 2025. (*See generally* Compl.)

Following the filing of the Consolidated Complaint, UHM's litigation counsel re-engaged Charles River Associates ("CRA") to (1) confirm that information from the UHM breach is still not currently available on the dark web, and (2) identify whether any of Plaintiffs' personal information was publicly available as a result of prior data breaches at other companies and organizations. (Langhans Decl. ¶ 15.) CRA investigated locations where UHM's breached data would most likely appear and found nothing. (Hart Rpt. ¶¶ 18, 21.) CRA did, however, find Plaintiffs' data (including names, addresses, emails, and Social Security numbers) in other large breach data sets freely available on the dark web. (*Id.* at ¶ 23.)

UHM now brings a motion to dismiss under Rule 12(b)(1) and 12(b)(6) and requests that this Court dismiss the Complaint in its entirety, with prejudice.

## III. ARGUMENT

### A. <u>Plaintiffs' Complaint Should Be Dismissed Pursuant to Rule 12(b)(1) Because They Do Not Have Article III Standing to Sue in Federal Court</u>

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the Court. "In order for a federal court to exercise jurisdiction over a matter, the party seeking relief must have standing to sue." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002). To have standing, a plaintiff must show that (i) he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Upon a motion to dismiss for lack of subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007).

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself and the court must take the non-conclusory material allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. *See U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

In contrast, when a Rule 12(b)(1) motion attacks the factual existence of jurisdiction, the court "has broad discretion over what evidence to consider and may look outside the pleadings to determine whether subject matter jurisdiction exists." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). In a factual challenge, there is no presumptive truthfulness to the allegations. *Ritchie*, 15 F.3d 592, at 598. A district court has "wide discretion to allow and review affidavits and other documents to resolve disputed jurisdictional facts" and doing so "does not convert the motion to dismiss to a Rule 56 summary judgment motion where it does not impact

the merits of the claim." *Little v. Louisville Gas & Elec. Co.*, 33 F. Supp. 3d 791, 797 (W.D. Ky. 2014), a*ff'd in part*, 805 F.3d 695 (6th Cir. 2015). When a defendant raises a factual standing challenge and submits evidence, a plaintiff cannot merely rely on the allegations in the complaint but must offer competing affirmative evidence that proves the court has jurisdiction. *Polkowski v. Jack Doheny Companies, Inc.*, No. 2:25-CV-10516, 2025 WL 3079358, at *7 (E.D. Mich. Nov. 4, 2025). Plaintiffs at all times bear the burden of proving that the court has subject matter jurisdiction. *Busacca v. Excavating, Bldg. Material & Const. Drivers Union Loc. 436 Welfare Fund Bd. of Trs.*, 953 F. Supp. 867, 871 (N.D. Ohio 1996).

#### *1. The Complaint Cannot Withstand a Facial Challenge to Plaintiffs' Standing*

When a case is at the pleading stage, a plaintiff must clearly allege facts demonstrating each element for standing. *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20CV235, 2021 WL 1192521, at *2 (S.D. Ohio Mar. 30, 2021). Here, Plaintiffs have not made sufficient non-conclusory factual allegations concerning their "injuries" to establish standing to sue. The Complaint does not allege facts giving rise to a plausible inference of actual or imminent misuse of their non-public personal information, and similarly does not allege that any injuries are fairly traceable to the UHM data breach. While the Court must accept a plaintiff's well pleaded, non-conclusory allegations as true on a facial attack to standing, documents attached to and referenced in a complaint are considered part of the pleadings. *See, e.g., Nat'l Ass'n of Minority Contractors, Dayton Chapter v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002). "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." *Id.*

**a. The Complaint Does Not Adequately Allege that Plaintiffs' Non-Public Personal Information Was Affected by the Data Breach**

The UHM Notice, cited and incorporated into the Complaint several times, states that the recipient's personal information was "potentially" accessed without authorization, that UHM "promptly initiated an investigation to determine whether personal information may have been affected and engaged independent digital forensics experts to assist with that process," and that UHM has "***no evidence of the misuse, or attempted misuse, of any potentially impacted information.***" (*See* Compl. ¶ 5, n.4 (Emphasis added) ("UHM Notice")). This statement is inconsistent with Plaintiffs' allegations that their Private Information *has* been accessed by criminals and has already been uploaded to the dark web. Accordingly, the Court should disregard Plaintiffs' conclusory, unsupported allegations that their personal information was accessed. *See, e.g., Doe v. Mission Essential Grp., LLC*, No. 2:23-CV-3365, 2024 WL 3877530, at *5 (S.D. Ohio Aug. 20, 2024), *appeal dismissed*, No. 24-3815, 2024 WL 5165129 (6th Cir. Dec. 2, 2024).

Moreover, Plaintiffs do not plausibly allege that *their* personal identifying information was actually taken. The UHM Notice states that the recipients' personal information was "*potentially*" affected. *See* UHM Notice. But this notice, without more, cannot support the conclusory allegations that these particular Plaintiffs' private information has in fact been stolen and misused. The court in *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 881 (N.D. Ill. 2014), for example, rejected the same argument Plaintiffs make here. The court noted that the plaintiff's allegation that her personal identifying information was stolen and compromised as a result of the breach of the South Carolina Department of Revenue ("SCDOR") database was "a conclusion in need of factual support" and that "the fact that hackers gained some access to a SCDOR database does not necessarily mean, or even plausibly suggest, that they obtained access to all of the data in

SCDOR's possession, and the complaint provides no basis to infer that the hacker (or hackers) obtained *her* data." *Id.* (Emphasis in original). The same reasoning applies here.

**b. Plaintiffs' Alleged Harms are Not an Injury-in-Fact**

Even if Plaintiffs had plausibly alleged that their personal information was accessed in the breach, they have not adequately alleged any concrete, actual or imminent injury-in-fact to support Article III standing. While Plaintiffs advance several different theories of "injury," each of them fails. *See Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 WL 6383467, at *4 (S.D. Ohio Sept. 29, 2023) (finding that alleged injuries arising from the risk of future identity theft, or the time spent monitoring financial accounts, or emotional distress, or an intangible violation of privacy, all rely on arguments the Supreme Court has rejected.).

First, courts routinely reject the theory that alleged diminution of value of personally identifiable information is an injury sufficient to confer standing. *See, e.g., Marlin v. Associated Materials, LLC*, No. 5:23CV1621, 2024 WL 2319115, at *3 (N.D. Ohio May 22, 2024) ("Plaintiffs never allege, however, that they were trying to derive any value from their personal data, and standing on that basis is commonly denied."); *Tate*, 2023 WL 6383467, at *5. Plaintiffs' Complaint suffers from the same deficiencies as those in *Marlin* and *Tate*: namely, Plaintiffs do not allege that they were trying to derive any value from their personal data.

Plaintiffs try to compensate for this deficiency by theorizing that "[t]he cybercriminals who obtained the Class Members' Private Information may exploit the information they obtained by selling the data in so-called "dark markets" or on the "dark web." (Compl. ¶ 328.) They also assert that "Big Data" has value "in corporate America" and in the "data brokering industry, and that cyber thefts can result in "heavy prison sentences." (Compl. ¶¶ 331, 332.) But these descriptions of how personal data has value to criminals and corporations say nothing about how the personal data had value to *Plaintiffs* in the absence of any allegation that Plaintiffs themselves sought to

derive value from their data. Thus, they have not alleged any facts showing that the data breached diminished the value of their personal information *to Plaintiffs.*

Second, Plaintiffs' general allegations of "emotional distress, fear, stress, nuisance, and annoyance" resulting from the data breach do not establish an injury-in-fact sufficient to confer standing. While a well pleaded, non-conclusory allegation of extreme emotional distress can suffice as an injury-in-fact to confer Article III standing, a general allegation of emotional harm like anxiety or distress falls short of a cognizable injury." *Van Vleck v. Leikin, Ingber, & Winters, P.C.*, No. 22-1859, 2023 WL 3123696, at *6 (6th Cir. Apr. 27, 2023) (citations omitted). Here, Plaintiffs offer nothing more than conclusory allegations that they have suffered emotional distress and other emotions. Such general allegations are not enough, especially considering that the Complaint does not adequately allege that the Plaintiffs' data has been misused. *See, e.g., Prows v. City of Oxford, OH*, No. 23-3920, 2024 WL 4786114, at *2 (6th Cir. Sept. 6, 2024), *cert. denied sub nom. Prows v. City of Oxford, Ohio*, 145 S. Ct. 1311 (2025) (internal citation omitted); *Doe*, 2024 WL 3877530, at *6 (S.D. Ohio Aug. 20, 2024).

Third, Plaintiffs' assertion of a loss of privacy is also insufficient because they do not allege that their purported loss of privacy caused them to suffer any tangible harm. Courts routinely hold that the mere loss of privacy is not a concrete and particularized injury for purposes of Article III. *See, e.g., Tate*, 2023 WL 6383467, at *5; *Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016), *aff'd sub nom. Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962, n.5 (D. Nev. 2015).

Fourth, while courts in this Circuit have found that increased spam calls and texts may sometimes be sufficient to confer standing, the court should decline to do so here, where the Complaint fails to adequately allege that any of Plaintiffs' non-public personal information has

actually been misused. *See Bednyak v. Fin. Risk Mitigation, Inc.*, 739 F. Supp. 3d 353, 370 (E.D. La. 2024) ("Where the plaintiff has suffered no actual misuse of his PII, as is the case with Bednyak, courts generally conclude that an increase in spam calls, texts, and/or emails without more is not sufficient to support standing.").

Courts are particularly hesitant to find spam calls and texts sufficient to confer standing where, as here, the complaint does not adequately allege that their phone numbers were breached. *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) (collecting cases). Plaintiffs' assertion that, "upon information and belief," their phone numbers and email addresses were exposed (Compl. ¶ 97) is a conclusory, self-serving allegation that is contradicted by the UHM Notice and entirely unsupported by well-pleaded factual allegations. "The phrase 'upon information and belief,' without more, does not transform a threadbare recital of legal requirements into sufficiently pled factual allegations." *Farber v. Athena of SC, LLC*, No. 3:23-CV-214-KAC-JEM, 2024 WL 2703882, at *2 (E.D. Tenn. Mar. 12, 2024) (internal citation omitted).

A subset of Plaintiffs also allege individual injuries. While these alleged injuries are superficially more specific, they are still insufficient to establish a cognizable injury.[3] None of the

[3] Peters alleges that he has received notifications that his confidential information was posted on the dark web. (Compl. ¶ 165) McMullen alleges that he was assessed a $35 overdraft fee for automatic billings on a compromised account he was forced to close. (*Id.* at ¶ 179) Washington alleges that she received bills for medical appointments she did not attend and that she noticed an unexplained decline in her credit score. (*Id.* at ¶¶ 187-188) Eils alleges that he has experienced unauthorized individuals attempting to take money out of his bank account and unauthorized credit card charges. (*Id.* at ¶ 220) Dowell alleges that he received notice of an individual attempting to take a loan out in his name and that he has received charges on his accounts that he did not authorize. (*Id.* at ¶ 241) Burrows alleges that he received an alert from his bank card notifying him of a potential fraud attempt and that he received a notification from Capital One and Experian that his information was found on the dark web. (*Id.* at ¶ 255) Christopherson alleges that he began seeing fraudulent charges on his bank card. (*Id.* at ¶ 267) And Wigham alleges that she began receiving fraud alerts informing her that an individual was trying to take money out of her bank account (*Id.* at ¶ 279).

Plaintiffs allege that any of the alleged attempted fraudulent activity was actually successful. For example, none of the Plaintiffs allege that they had to pay for any overdraft fees or that they had to cover the cost of fraudulent bank charges. *See Burger v. Healthcare Mgmt. Sols., LLC*, No. CV RDB-23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024). Similarly, Plaintiff Dowell does not allege that an individual was *successful* in taking out a loan, only that someone had attempted to do so. And Plaintiff Washington does not explain what injury she suffered due to receiving fake medical bills. Accordingly, these alleged harms fall short of establishing cognizable injuries to satisfy Article III. Even if they did, Plaintiffs have not adequately pleaded any facts to show that these alleged harms are fairly traceable to the Data Breach. *See Infra*, pp. 11-12.

**c. Plaintiffs Have Not Alleged Facts Sufficient to Establish a Material Risk of Imminent Future Harm**

Plaintiffs' allegations of future harm also do not create standing. The Supreme Court has made clear that "in a suit for damages the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021). Moreover, Plaintiffs' allegations that they have spent time and money to avert future harm do not suffice where that future harm is itself insufficient. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).[4]

Plaintiffs will almost certainly cite *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016) for the proposition that the risk of future identify theft is sufficient to confer

[4] Plaintiffs' allegations that they have spent time and money monitoring accounts for fraudulent activity are insufficient for the additional reason that they are conclusory and unsupported by well pleaded factual allegations. None of the Plaintiffs identify what exactly they have done or the time spent doing it, instead relying on generic and formulaic allegations. Courts have repeatedly found that such threadbare allegations of time and money spent monitoring accounts and researching and investigating a data breach are insufficient to confer standing. *See, e.g., Marlin*, 2024 WL 2319115, at *2 (N.D. Ohio May 22, 2024); *Doe*, 2024 WL 3877530, at *6 (S.D. Ohio Aug. 20, 2024).

standing. Although the Sixth Circuit has not had the opportunity to revisit *Galaria* post-*TransUnion*, courts in this and other circuits have held that *TransUnion* effectively overruled any lower court precedent holding that the risk of future harm is a cognizable injury for standing purposes. For example, Judge Pearson recently held that *TransUnion* "'casts some doubt on the continued viability of *Galaria*'" on this issue and that "'*Galaria's* finding of an injury-in-fact based on a risk of future harm caused by a data breach may no longer be valid.'" *Marlin*, 2024 WL 2319115, at *8 (N.D. Ohio May 22, 2024) (quoting *Brickman v. Maximus, Inc.,* No. 2:21-cv-3822, 2022 WL 16836186, at *3-4 (S.D. Ohio May 2, 2022)). Accordingly, Judge Pearson found that plaintiffs' allegations of the risk of future harm were not sufficient to establish standing because they did not "demonstrate that the harm is 'certainly impending'" and they did "not allege that any plaintiff lost any actual funds." *Id.*; *see also Tate*, 2023 WL 6383467, at *4.

Plaintiffs do not plausibly allege misuse of their personal information, or any other facts to suggest that they are at risk of certainly impending harm. Plaintiffs' allegations regarding the increased risk of future misuse of their personal information, without more, are exactly the type of vague and unsubstantiated "pre-existing" risk the Supreme Court rejected in *TransUnion.*

**d. Plaintiffs' Injuries are Not Fairly Traceable to the Data Breach**

Even if Plaintiffs had alleged concrete, actual or certainly impending injuries, they fail to plead that any such injuries are fairly traceable to the data breach or to UHM's conduct. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("there must be a causal connection between the injury and the conduct complained of[.]"). Where the only link between the data breach and the claimed injury is that the injury allegedly came after the data breach, then the complaint falls short of alleging a "substantial likelihood" that the data breach caused the injury. *Masterson v. IMA Fin. Grp., Inc.*, No. 223CV02223HLTADM, 2023 WL 8647157, at *4 (D. Kan. Dec. 14, 2023); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012) ("to prove that a data breach

caused identity theft, the pleadings must include allegations of a nexus between the two instances beyond allegations of time and sequence.").

Plaintiffs' Complaint relies on vague allegations that their respective injuries did not arise until after the data breach. But these conclusory statements, without more, are not enough to show that the alleged injuries are fairly traceable to the data breach. Moreover, the Complaint incorporates documents that expressly contradict these threadbare allegations. *See supra* at pp. 6-7. There are no allegations that give rise to a plausible inference that these specific Plaintiffs' data was stolen. Rather, the notice of the breach states only that their private information *may* have been affected by the data breach. Moreover, there is nothing in the Complaint that sufficiently alleges that these Plaintiffs' personal information has been misused. Again, the UHM Notice incorporated in the Complaint makes clear that the independent forensics experts UHM hired did not find any evidence of misuse, or attempted misuse, of any potentially affected information.

Furthermore, the Complaint does not plausibly allege what wrongful actions (or inactions) by UHM permitted the data breach. In fact, the Complaint incorporates UHM's Privacy Policy (Compl. ¶ 90 and fn. 12) which states, "We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information" and "We employ industry recognized security safeguards to help protect the personally identifiable information that you have provided to us from loss, misuse, or unauthorized alteration. To protect you we have deployed modern encryption protocols with industry accepted cipher strengths." Thus, the Court should ignore Plaintiffs' unsupported, conclusory allegations that UHM failed to implement or maintain adequate security practices. *See, e.g.* Compl. ¶¶ 10, 14.[5]

[5] Regarding the individual allegations of injury summarized in footnote 3, *supra*, the Complaint does not plausibly allege that unauthorized access to any of the personally identifiable information possibly affected by the breach could have caused these injuries. The UHM Notice identifies the

**e. Plaintiffs Do Not Have Standing To Seek Injunctive Relief**

A plaintiff must establish standing for each claim he brings, and for each form of relief. *Norton v. Beasley*, No. 21-6053, 2022 WL 17348385, at *6 (6th Cir. Dec. 1, 2022). For the reasons discussed above, Plaintiffs have not pleaded facts to show that they have standing to pursue any of their claims, or to seek damages or injunctive relief. Plaintiffs lack standing to seek an injunction requiring UHM to "employ adequate security protocols" for the additional reason that they have not pleaded facts showing that there is a "substantial and imminent risk" of a second data breach at UHM. *See, e.g., Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 776 (S.D. Ohio 2024) (finding that plaintiffs lacked standing to seek injunctive relief because they had not pleaded facts demonstrating a substantial and imminent risk of a second data breach); *In re Bon Secours Mercy Health Data Breach Litig.*, No. 1:24-CV-594, 2025 WL 1827804, at *7 (S.D. Ohio July 2, 2025) (same). *See also Los Angeles v. Lyons*, 461 U.S 95, 111 (1983) (plaintiff did not have standing to seek injunctive relief because he had not shown a sufficient likelihood that he would be injured in a way similar to the way he had been injured by defendant before).

---

potentially affected information as names, loan numbers, Social Security numbers, driver's license or government-issued ID card numbers, or date of birth. (Compl, ¶ 7 and fn. 7.) But there are no allegations that Plaintiffs' banking information, credit card information, or medical information was affected (or even that UHM collected and stored such information). And the Complaint does not allege what private information affected by the Data Breach would lead to a decline in Plaintiff Washington's credit score. *See, e.g., Burger v. Healthcare Mgmt. Sols., LLC*, No. CV RDB-23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) ("[E]ven taking Burger's allegations as true, unauthorized charges on her credit card cannot be fairly traced to either of the defendants. Burger does not allege that her credit card information itself was disclosed; she alleges only that her bank account information was disclosed."); *see also Doe*, 2024 WL 3877530, at *7 (S.D. Ohio Aug. 20, 2024) (finding no traceability for alleged fraudulent emails injury where plaintiff did not allege that his email address was accessed during data incident).

#### 2. *Plaintiffs' Complaint Cannot Withstand a Factual Challenge Pursuant to Fed. R. Civ. P. 12(b)(1)*

Even if the Complaint on its face were sufficient to establish standing, the actual facts contradict Plaintiffs' allegations of injury. Attached to this brief are declarations from Adam Hart, a forensic expert and investigator at CRA who participated in UHM's breach response and conducted a search for any evidence of the breached UHM data on the dark web (Exhibit 2), and Mark Langhans, UHM's Chief Information Officer (Exhibit 1). These declarations establish that, contrary to the Complaint's conclusory allegations: (1) Qilin deleted the stolen UHM data after UHM paid the ransom, and agreed not to target UHM in the future; (2) Qilin has a solid reputation for keeping its word when a victim pays a ransom, and deletes any stolen information and does not publicize it; (3) no UHM data from the Data Breach has been posted on the dark web or elsewhere; (4) the UHM data is highly unlikely to ever be posted on the dark web or elsewhere; (5) UHM does not possess certain data of some of the named Plaintiffs that those Plaintiffs allege was stolen from UHM; (6) Plaintiffs' personal information from *other, prior* data breaches at other entities has been posted and is available on the dark web;[6] and (7) UHM has instituted additional security measures to bolster its already substantial security program, making any repetition of the breach unlikely.

These facts demonstrate that Plaintiffs' allegations that their data was misused are untrue. They also demonstrate that the risk of future misuse of the data is extremely unlikely, and definitely

---

[6] For example, UHM's expert was able to find the following Plaintiffs' information on the dark web from previous data breaches: (1) Rudd's Social Security number and phone number; (2) Fink's email address; (3) DiMarco's email address, Social Security number, and phone number; (3) McMullen's Social Security number and phone number; (4) Washington's email address and Social Security number; (5) Florczykowski's email address; (6) Contee's email address, Social Security number, and phone number; (7) Eils' email address and Social Security number; (8) Burrows' email address, Social Security number, and phone number; and (9) Whigham's email address, Social Security number, and phone number.

not "certainly impending." In addition, while Qilin was at one time in possession of some of the data of some of the Plaintiffs, and theoretically could have looked at that data, this does not constitute a cognizable harm because it does not bear a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (citation omitted). Rather, as Judge Pearson recently held, only "disclosure to the 'public at large" would constitute a cognizable harm to Plaintiffs' privacy interests. *Marlin*, 2024 WL 2319115, at *5. But such disclosure to the public never happened here.

Moreover, there is no possibility that the data breach somehow diminished the value of Plaintiffs' personal information because (1) the UHM data from the breach was never published on the dark web and is highly unlikely to ever be posted, and (2) even if the data from the breach were posted, it would not diminish the value of Plaintiffs' personal information because that information has already been available on the dark web as a result of prior breaches of other entities.

These facts also show that Plaintiffs' alleged injuries are not traceable to the UHM breach. If Plaintiffs had actually experienced some kind of fraud, identity theft, spam calls and texts, decline in credit scores, or compromise of a financial account, those incidents could not have been a result of misuse of the UHM data but would more likely have been the result of misuse of Plaintiffs' information stolen in other breaches. And if the availability of Plaintiffs' personal information on the dark web has somehow diminished the value of that information to Plaintiffs, that diminution could not have been caused by the UHM breach, but rather would likely have been caused by other, prior data breaches at other entities.

Accordingly, since the actual facts establish that Plaintiffs have not been injured by the UHM data breach, and any future injury is not certainly impending, the Court should dismiss the

entire Complaint, with prejudice. No allegations that Plaintiffs might add to an amended Complaint would change these facts.

### B. Plaintiffs' Complaint Should be Dismissed Pursuant to Rule 12(b)(6) Because It Fails to State a Claim Upon Which Relief Can be Granted

Even if Plaintiffs had standing to bring this lawsuit, their Complaint should be dismissed because none of their causes of action states a claim upon which relief can be granted. Under Rule 12(b)(6), to "survive a motion to dismiss, the complaint must allege grounds entitling plaintiff to relief, which requires 'more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action.' The '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Casden v. Burns*, 306 F. App'x 966, 973 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to prevail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

While a court accepts well-pleaded allegations as true when considering a 12(b)(6) motion, it "may disregard 'naked assertions' of fact or 'formulaic recitations of the elements of a cause of action.'" *Tate*, 2023 WL 6383467, at *4 (quoting *Iqbal*, 556 U.S. at 678). A claim should be dismissed when the complaint fails to allege facts necessary to satisfy each element of the claim. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 490 (6th Cir. 1990).[7]

#### *1. Negligence*

To state a claim for negligence under Ohio law, the Plaintiff must plausibly allege: "(1) the existence of a legal duty; (2) the breach of that duty; and (3) harm proximately caused by the breach." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 635 (N.D. Ohio 2014). A plaintiff's

---

[7] UHM makes reference to Ohio substantive law in this Motion, but does not concede that Ohio substantive law will apply to all putative class members' claims. Different state laws will have variable impacts on the putative class making class certification inappropriate.

inability to prove any one of these elements is "fatal" to the claim. *Oliphant v. AWP, Inc.*, 143 N.E.3d 552, 562 (Ohio 2020).

**a. Plaintiffs Fail to Allege that UHM Owed Them a Duty of Care**

A legal duty "may be established by common law, by legislative enactment, or by the particular circumstances of a given case." *Shepherd v. City of Cincinnati*, 860 N.E.2d 808, 812 (Ohio App. 2006). The existence of a duty is a question of law. *Miller v. Vreba Hoff Dairy Dev., LLC*, No. 3:07 CV 1359, 2007 WL 4191993, *2 (N.D. Ohio Nov. 21, 2007). Plaintiffs allege that "Defendant owed a duty of care to Plaintiffs and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, the GLBA, and other requirements…" (Compl. ¶ 408.) This conclusory assertion is insufficient to establish that UHM owed Plaintiffs a duty of care.

Tacitly acknowledging the absence of a common law duty to maintain reasonable data security, Plaintiffs try to import a duty from Section 5 of the FTC Act and the GLBA. (*Id.*) But those statutes do not create such a duty. "If a federal statute does not include a private right of action, Ohio law does not allow a plaintiff to use the statute as a basis for a negligence per se claim." *Brickman v. Maximus*, No. 2:21-cv-3822, 2022 WL 16836186, at *7 (S.D. Ohio May 2, 2022); *see also Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 779 (S.D. Ohio 2024); *Rogozinsky v. Danek Med., Inc.*, No. 4:96CV2572, 1999 WL 33537323, *2 (N.D. Ohio July 8, 1999). Neither Section 5 of the FTCA nor the GLBA allows for a private right of action. *See Brooks,* 732 F. Supp. 3d at 779 (S.D. Ohio 2024); *In re Lentz*, 405 B.R. 893, 899 (Bankr. N.D. Ohio 2009). Further, both Acts "provide their own enforcement mechanisms" and do not "provide evidence of a duty." *Johnson v. Yuma Reg'l Med. Ctr.*, 769 F. Supp. 3d 936*,* 955 (D. Ariz. 2024); *see also In re Lentz*, 405 B.R. at 899.

Plaintiffs also attempt to establish a common law duty of care to protect data based on unidentified "industry standards." (Compl. ¶ 408.) However, Courts have held that no common law duty of care exists in the context of data breaches. *See, e.g., Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 897 (N.D. Ill. 2012); *Dolmage v. Combined Ins. Co. of Am.*, 14-C-3809, 2015 WL 292947, *6 (N.D. Ill. Jan. 21, 2015); *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 29 (Ill. App. Ct. 2010); *Hammond v. The Bank of New York Mellon Corp.*, 08-Civ-6060, 2010 WL 2643307, at *10 (S.D.N.Y. June 25, 2010) (same).

Plaintiffs also allege that UHM's duty "arose as a result of the special relationship that existed between Defendant and Plaintiffs and Class Members" (Compl. ¶ 409), which they allege "result[ed] from Plaintiffs and Class Members entrusting Defendant with confidential Private Information." (Compl. ¶ 419.) But Plaintiffs do not adequately plead the nature of any such special relationship. Ohio law recognizes five types of special relationships: "a business owner and invitee, a common carrier and its passengers, an innkeeper and its guests, a possessor of land and an invitee, a custodian and individual taken into her custody, and an employer and her employee." *Meros v. Sunbelt Rentals, Inc.*, 2023-Ohio-4313, 230 N.E.3d 487, 492. There is not a special relationship between a business and its customers (*see Godwin v. Facebook, Inc.*, 2020-Ohio-4834, 160 N.E.3d 372) or between an employer and a *former* employee (*see Bailey v. United States*, 115 F. Supp. 3d 882, 893 (N.D. Ohio 2015) (special relationship exists between employer and employee "while at work"); Restatement (Third) Torts §40) (special relationship limited to employees who, while at work, are in imminent danger or are injured or ill and therefore rendered helpless).

Because Plaintiffs have not pleaded a special relationship, UHM had no duty to protect them against harm from third-party criminals. *See In re CBIZ Data Breach Litig.*, No. 1:24 CV 1722, 2025 WL 1557033, *6 (N.D. Ohio June 2, 2025).

**b. Plaintiffs' Conclusory Allegations of Breach of a Duty are Insufficient**

Even if Plaintiffs had adequately pleaded that UHM owed a duty to Plaintiffs to maintain reasonable data security, the Complaint's conclusory allegations of a breach of the alleged duty are insufficient to pass Rule 8 muster. (Compl. ¶ 420.) Without factual allegations supporting the conclusory assertion that UHM failed to take reasonable measures to protect Plaintiffs' Private Information, Plaintiffs essentially seek to hold UHM liable for "the fact of the data breach alone." *In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, *5 (S.D.N.Y. Feb. 24, 2022). "But the law does not impose strict liability for harms arising of the storage of personal information." *Id.* In this age when skilled hackers can, and do, breach even the most stringent security measures, the mere fact of a breach does not give rise to a plausible inference that the victimized company had inadequate security. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (when there is an "obvious alternative explanation" a pleading's conclusion is not "plausible"). A plaintiff must make sufficient non-conclusory, non-circular allegations about the defendant's security measures to render such an inference plausible. *See Johnson,* 769 F. Supp. 3d 936, at 954 ("Plaintiffs repeatedly invoke 'industry practices'…[but] do not describe what those practices entail, and presume that because the breach occurred, [Defendant's] system was not up to par."); *Waste Mgmt.*, 2022 WL 561734 at *5 (S.D.N.Y. Feb. 24, 2022); *see also Iqbal*, 556 U.S. at 678.

**c. Plaintiffs Fail to Allege a Cognizable Injury Caused by the Data Breach**

For the same reason, Plaintiffs have failed to plausibly allege cognizable injuries, or that their alleged injuries were caused by the data breach at issue in this case. Plaintiffs allege a laundry list of purported injuries "that they suffered or are at an increased risk of suffering" (Compl. ¶ 290.) (Emphasis added). However, these conclusory allegations of injury fail because they are

unsupported by sufficient factual allegations, are not legally cognizable, and/or were not caused by the Data Breach. *See supra* pp. 5-13.

Plaintiffs' negligence claim also fails because the economic loss rule bars recovery in tort of economic losses or other non-physical injuries. *See Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 638 (S.D. Ohio 2020); *McGee v. Thornton*, No. 2013-UP-156, 2013 WL 8507864, at *2 (S.C. Ct. App. Apr. 17, 2013).  Thus, even if plaintiffs satisfy the basic elements of their negligence claims, "they must also allege an injury other than economic loss to state a cognizable claim for relief." *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, at *3 (S.D. Ohio Jan. 26, 2023) (dismissing negligence claim).

Plaintiffs do allege "injuries involving invasion and loss of privacy, emotional distress, stress, anxiety, fear, nervousness, and anger." (Compl. ¶ 385.) But the "economic loss doctrine precludes a claim based on mental injuries unless they are accompanied by an allegation that Plaintiff feared or saw some quantifiable physical loss," which is not alleged here. *Id.* (citing *Lawyers Coop. Publ'g. Co. v. Meuthing*, 603 N.E.2d 969, 975 (Ohio 1992)); *see also Osborne v. Keeney,* 399 S.W.3d 1, 14 (Ky. 2012) ("[A]n action will not lie for fright, shock, or mental anguish which is unaccompanied by physical contact or injury."). Likewise, the economic loss doctrine precludes recovery for an invasion of privacy injury. *Tucker*, 2023 WL 423504, at *4 (S.D. Ohio Jan. 26, 2023) (*citing Herman v. Kratche*, No. 86697, 2006 WL 3240680, at 6* (Ohio App. Nov. 9, 2006)).

Plaintiffs also seek indirect economic losses. (Compl. ¶ 432.)  But once again, they do not allege any accompanying tangible physical injury to persons or property. Consequently, Plaintiffs'

claims are barred by the economic-loss rule. *See, e.g., Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 866 (S.D. Ohio 2013).

#### *2. Breach of Implied Contract*

The existence of an implied contract claim shares the same elements as an express contract: "offer, acceptance, consideration, and a meeting of the minds." *Randleman v. Fidelity Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 818 (N.D. Ohio 2006) (citing *Danko v. MBIS, Inc.*, 8th Dist. Cuyahoga No. 68131, 1995 WL 572021, at *3 (Sept. 28, 1995)). Here, Plaintiffs fail to allege the meeting-of-the-minds and consideration elements of contract formation.

"Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012). Although valid consideration can be small, "it must be determined in a contract case whether any consideration was really bargained for." *Id.* "If it was not bargained for, it could not support a contract." *Id.* Plaintiffs allege that they "would not have entrusted their Private Information to Defendant in absence of their implied contracts" (Compl. ¶ 448.) and that Defendant's "implied promises" are "evidenced by the language in its public facing privacy policy." But, crucially, Plaintiffs do not allege "that they read or relied on the privacy policy before entering a business relationship with [Defendant] to establish valid consideration." *Johnson*, 769 F. Supp. 3d 936, at 955–56. Therefore, Plaintiffs allegations of consideration are "merely conclusory." *Id.*

Furthermore, Plaintiffs also claim that UHM had preexisting legal obligations to protect their data (Compl. ¶ 440.), but courts do not allow a breach of contract claim where contractual duties mirror legal ones. *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, *5 (S.D. Ohio Jan. 26, 2023); *Johnson,* 769 F. Supp. 3d 936, at 956 (citing *In re Banner Health*, 2017 WL 6763548, at *3).

To form a contract, there must also be a "meeting of the minds" on the "terms" of the contract, such that the parties have a "distinct and common intention." *Hong Sup Kim v. Kee Hoon Lee*, No. 2:14-CV-00591, 2017 WL 932382, *5 (S.D. Ohio Mar. 9, 2017). Where a contract is implied in fact, "the meeting of the minds . . . is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding." *Freelon v. GRG Farms, Inc.*, 2024-Ohio-4764, ¶ 23, 254 N.E.3d 749, 755; *Rolsen v. Lazarus, Inc.*, No. C-990588, 2000 WL 1434170, *5 (Ohio Ct. App. Sept. 29, 2000). Plaintiffs make only conclusory allegations of a meeting of the minds and the resulting terms of the contract (Compl. ¶ 445.), which is insufficient to satisfy Rule 8's pleading standard. *See Tate*, 2023 WL 6383467, at *4 (quoting *Iqbal*, 556 U.S. at 678).

To the extent Plaintiffs attempt to create a meeting of the minds through UHM's publicly available privacy policy (Compl. ¶¶ 440-442.), that approach is similarly unavailing. UHM's Privacy Policy "does not necessarily promise an outcome that a breach would not occur." *Johnson,* 769 F. Supp. 3d 936, at 956. Therefore, Plaintiffs have failed to state an implied contract claim.

***3. Unjust Enrichment***

The elements of an unjust enrichment claim are: (1) "the plaintiff conferred a benefit upon the defendant," (2) "the defendant had knowledge of such benefit," and (3) "the defendant retained the benefit under circumstances in which it would be unjust for him or her to retain that benefit." *Cleveland Central Catholic High Sch. v. Mills*, 125 N.E.3d 328, 340 (Ohio Ct. App. 2018) (quotation omitted). Plaintiffs conclusorily plead that they "conferred a benefit" upon UHM in the form of their private information. (Compl. ¶458.) But they do not allege any facts to show how that information provided a "benefit" to UHM. In fact, the Complaint's allegations (and common sense) suggest that UHM collected Plaintiffs' personal information in order to process consumers' mortgage applications and potential employees' employment applications. And the

Privacy Policy makes clear that the purpose of collecting consumers' non-public personal information is "to allow a lender to make an informed decision about granting you credit," and to allow UHM's service providers to assist UHM "in qualifying, processing, closing, and servicing your loan."  (Exhibit 3, Declaration of Michael A. Vatis ("Vatis Decl."), Ex. A.)[8], There is no factual allegation that gives rise to a plausible inference that the Plaintiffs' information provided a benefit to UHM, such as an allegation that UHM sold the information to third parties or used it for marketing purposes. And the privacy policy expressly says that access to the information is limited "to those employees who need to know that information to provide products and services to you." (Vatis Decl., Ex. A.)

Plaintiffs also allege that "Defendant funds its data security measures entirely from its general revenue, including payments on behalf of or for the benefit of Plaintiffs and some Class Members."  (Compl. ¶ 460.)  However, they do not describe these "payments" as the "benefit" they provided to UHM. Rather, they allege only that Plaintiffs' "Private Information" was the benefit they conferred on UHM.  (Compl. ¶460.) An unjust enrichment claim may be used only to force a defendant to disgorge the benefit it allegedly received from the plaintiff, not money from its general revenue or some other thing of value. *See, e.g., Haddad v. Maalouf-Masek*, 2024-Ohio-1983, *15.  Even "[a]ssuming payment for [services] includes payment earmarked for security of the data, that assumption requires further speculation that [Defendant] did not use that money to safeguard their data and retained some benefit." *Johnson,* 769 F. Supp. 3d 936, at 957.

---

[8] UHM attaches its Privacy Policy for ease of reference.  The Court may properly consider the Privacy Policy because Plaintiffs cite it in their Complaint and it is central to their claims. (Compl. ¶ 87, fn. 12.) *Steele v. Nationwide Children's Hosp.*, No. 2:23-CV-3335, 2024 WL 4303234, *3 (S.D. Ohio Sept. 26, 2024).

Even if payments made by, or for the benefit of, Plaintiffs were considered a benefit to UHM, Plaintiffs never allege what these payments were, but just vaguely allude to "payments on behalf of or for the benefit of Plaintiffs and some Class Members." (Compl. ¶460). This indeterminate reference fails to meet the Rule 8 standard.  *Iqbal*, 556 U.S., at 678. It is not clear whether Plaintiffs are referring to mortgage payments (which are made to pay down a loan, not for services like data protection), fees, or something else. Moreover, this allusion to payments conflicts with common sense with respect to at least some of the Plaintiffs, who would obviously not have made any payments to UHM, and are not alleged to have done so—such as the former employee (Rudd). Similarly, Plaintiffs or class members who did not advance in the application process beyond submitting their information for a credit check likely would not have made any payments to UHM.

Finally, there are no factual allegations suggesting that it would be "unjust" to allow UHM to retain any (unidentified) payments it might have received from mortgage customers in exchange for obtaining a mortgage. Any of the Plaintiffs who could conceivably have made a payment to UHM (current or former customers, or applicants for a mortgage from UHM) do not allege that UHM did not process their mortgage applications or arrange a mortgage for them. They paid to apply for a mortgage or to receive a mortgage, and they got what they paid for. "A traditional exchange of payment for goods and services is not a circumstance in which it is 'unjust' to allow the defendant to retain the benefit." *Tate*, 2023 WL 6383467, at *8 (S.D. Oh. Sept. 29, 2023) (citing *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) ("Plaintiffs paid for burritos; Plaintiffs received burritos.")).

Courts have recently dismissed similar claims in other data breach cases, and this Court should do the same here. *See, e.g., Tate*, 2023 WL 6383467, at *8 ("Plaintiffs got what they paid

for—vision benefits."); *Peoples Bank*, 732 F. Supp. 3d, at 782 ("Plaintiffs fail to plausibly allege that the banking fees Plaintiffs paid were in exchange for PII protection."); *Johnson,* 769 F. Supp. 3d 936, at 957 (dismissing unjust enrichment claim based on a theory that Plaintiffs had paid some additional unspecified amount for data security).

***4. California Consumer Privacy Act (CCPA)***

Two of the Plaintiffs are California residents (Peters and San Nicolas), and bring claims under the CCPA. (Compl. ¶¶ 473-48) The CCPA imposes a duty on businesses that collect or maintain a Californian's "personal information" to "implement and maintain reasonable security procedures and practices," Cal. Civ. Code § 1798.81.5(b), and confers a private right of action for California Residents whose "nonencrypted and nonredacted personal information ... is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of th[at] duty," *Id.* § 1798.150(a)(1).

In connection with UHM's alleged violations of the CCPA, "Plaintiffs seek statutory damages, injunctive or declaratory relief, and any other relief the Court deems proper." (Compl. ¶ 478.) Injunctive and declaratory relief are inappropriate, as discussed *infra* at pp. 27-29. The CCPA claim is unavailing, for several reasons.

First, Plaintiffs Peters and San Nicolas are barred from seeking statutory damages under the CCPA because they failed to meet the CCPA's pre-suit notice requirements. In order to seek statutory damages under CCPA, Plaintiffs must provide a business with "30 days' written notice identifying the specific provisions of [the CCPA]" that the Plaintiffs allege were violated. Cal. Civ. Code § 1798.150(b). Further, if the business "actually cures the noticed violation and provides the consumer an express written statement that the violations have been cured and that no further violations shall occur, no action for individual statutory or class-wide statutory damages *may be initiated* against the business." *Id.* (emphasis added).

Plaintiff failed to provide UHM adequate pre-suit notice. Plaintiff San Nicolas did not provide UHM with any pre-suit notice. Plaintiff Peters alleges that he mailed a CCPA notice to UHM's registered service agents on October 21, 2025. (Compl. ¶ 476.) Plaintiffs filed their consolidated complaint on November 3, 2025, only 13 days after Plaintiff Peters mailed his CCPA notice. (*See* ECF 12.; Vatis Decl., Ex. B.) This does not meet the statute's 30-day notice requirement. Further, the notice did not specifically allege what provisions of the CCPA UHM allegedly violated. (*See* Vatis Decl., Ex. B.)

In addition, UHM cured any alleged violations and provided Plaintiff Peters with an express written statement that any such violations have been cured and that no further violations shall occur. (Vatis Decl., Ex. C.) Under the express terms of the CCPA, this written statement from UHM prohibits Peters from even *initiating* an action for statutory damages under the CCPA. *See* Cal. Civ. Code § 1798.150(b); *see also In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-MD-3083-ADB-PGL, 2025 WL 2179475, *26 (D. Mass. July 31, 2025) (dismissing CCPA claim because Defendant cured the CCPA violations and sent written statement to plaintiff stating so).

While these flaws are fatal for Plaintiffs' CCPA claim for statutory damages, Plaintiff has also failed to adequately plead all elements of the claim. For their CCPA claim, Plaintiffs must plead facts (1) identifying reasonable security procedures and practices that would have prevented disclosures of their private information, which (2) Defendant did not take, and as a result (3) Plaintiffs' personal information was subjected to unauthorized access. *In re Warner Music Grp. Data Breach*, No. 20 CIV. 7473 (PGG), 2025 WL 2531832, *22 (S.D.N.Y. Sept. 3, 2025). Plaintiffs do not allege what security measures were necessary to protect their data but were not implemented and maintained by Defendant. Accordingly, their CCPA claim should be dismissed in its entirety. *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025 (C.D. Cal. 2024)

(finding Plaintiffs' allegations that Defendant "failed to monitor their systems to identify suspicious activity and allowed the imposter's unauthorized access to Plaintiff's personal information" insufficient to state a CCPA claim).

#### *5. Plaintiffs' Allegations are Insufficient to Permit Declaratory or Injunctive Relief*

Both declaratory and injunctive relief are "a remedy for a claim, not a cause of action." *Allen v. Anderson Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012); *Davis v. U.S.*, 499 F.3d 590, 594 (6th Cir. 2007) (*citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). As such, requests for declaratory and injunctive relief are not valid standalone claims. Plaintiffs "claim" for declaratory and injunctive relief should therefore be dismissed.

In addition, requests for declaratory and injunctive relief cannot survive absent a viable predicate claim, which, as explained above and below, Plaintiffs fail to state. *See Hicks v. PHH Mortg. Corp., Inc.*, No. 1:23-CV-356, 2023 WL 8455139, at *6-7 (S.D. Ohio Dec. 6, 2023), *report and recommendation adopted*, No. 1:23-CV-356, 2024 WL 193653 (S.D. Ohio Jan. 18, 2024).

In addition, Plaintiffs fail to plead any entitlement to injunctive or declaratory relief. Courts generally consider "five factors to determine whether a case is appropriate for declaratory judgment." *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004). Three of those factors are relevant here, including whether: (i) the judgment would settle the controversy; (ii) the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; and (iii) there is an alternative remedy that is better or more effective. Against this standard, Plaintiffs fail to plead facts showing entitlement to a declaration.

As to the first factor, the declaratory judgment Plaintiffs seek would not settle the controversy at all, because Plaintiffs are also seeking damages and injunctive relief. A declaratory judgment would not resolve Plaintiffs' substantive claims and their request for injunctive relief. In

addition, Plaintiffs demand that this Court issue a judgment declaring that UHM has a legal duty to comply with the law—*i.e.*, a duty to comply with Section 5 of the FTC Act and GLBA and "associated rules and regulations." (Compl. ¶ 486.) That ill-defined and tautological declaration will not meaningfully settle the controversy between the parties—to the extent one even exists—because it will neither inform UHM which specific legal duties it supposedly violated nor explain how it can avoid violating them in the future.

As to the second and third factors, the declaration Plaintiffs seek will not serve *any* purpose, let alone a useful one, in clarifying the legal relations at issue, because Plaintiffs have an alternative remedy that is better or more effective—namely, their substantive claims and request for damages. Any declaratory judgment would be entirely redundant. *Vasu v. Combi Packaging Sys. LLC*, No. 5:18-CV-1889, 2020 WL 2733756, *9 (N.D. Ohio May 25, 2020); *Cliffs Sales Co. v. Am. Steamship Co.*, No. 1:07 CV 1466, 2008 WL 3852138, *4 (N.D. Ohio Aug. 18, 2008). Conversely, if Plaintiffs are unsuccessful on their underlying claims and request for injunctive relief, they would obviously not be entitled to a declaratory judgment. Moreover, if Plaintiffs are able to obtain the injunctive relief they seek, the Court's decision granting that relief would necessarily include the declarations Plaintiffs seek, as well as an order requiring Plaintiffs to take actions to provide additional security measures. Plaintiffs' substantive claims and request for injunctive relief thus obviously would provide Plaintiffs with a better remedy than a declaratory judgment.

Plaintiffs also fail to establish their entitlement to injunctive relief. As a threshold matter, Plaintiffs lack standing to seek injunctive relief, as discussed *supra* at p. 13. In addition, Plaintiffs conclusory assertion that "Defendant's data security measures remain inadequate" (Compl. ¶485.) is unsupported by any factual allegations whatsoever about Defendant's current security measures. Moreover, "[a]n injunction couldn't remedy future misuse of data already in the hands of unknown

third parties." *Jenkins*, 2025 WL 708574, at *14. And "the complaint's allegations [do not] show defendant face[s] a greater risk of a data breach than any other entity that holds PII." *Id.* (cleaned up). If Plaintiffs could maintain a suit for injunctive relief on the basis of UHM's being at risk of a future data breach, then "virtually every company and government agency might be exposed to requests for injunctive relief like the one the plaintiffs seek here." *Id.* (citations omitted). Plaintiffs' "claims" for declaratory and injunctive relief should be dismissed.

***6. North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")***

To state a claim under the NCDTPA, Plaintiffs must prove that an act committed by UHM is unfair or deceptive. *See Business Cabling, Inc. v. Yokeley*, 182 N.C. App. 657, 663 (2007). An act is unfair "when it offends established public policy,...is immoral, unethical, oppressive, unscrupulous," or "amounts to an inequitable assertion of ... power or position." *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, at 660 (E.D.N.C. 2017). A practice is deceptive only if it "has a tendency to deceive." *Id.* Moreover, "*some type of* egregious or aggravating circumstances must be alleged and proved before the Act's provisions may [take effect].'" *Business Cabling*, 182 N.C. App. at 663 (quoting *Dalton v. Camp*, 353 N.C. 647, 657 (2001) (emphasis in original).

Plaintiff Dowell has identified no practice or conduct of UHM that was unfair or deceptive, much less egregious or aggravating. The Act does not provide for strict liability every time a defendant allegedly makes a mistake. *See Curtis B. Pearson Music Co. v. Everitt,* 368 F. App'x 450, 455 (4th Cir. 2010); *Rogers*, 243 F. Supp. at 660. Nor does liability arise every time there is an alleged improper disclosure of information or a failure to implement sufficient data security measures. *See In re Fifth Third Bank, Nat. Ass'n-Vill. of Penland Litig.*, 217 N.C. App. 199, 209 (2011). Here, Defendant was the victim of a ransomware and hacking attack by a sophisticated criminal group. While Plaintiffs allege that Defendant's security measures were inadequate, even

if this is true it would not constitute an unfair or deceptive practice, let alone egregious or aggravating circumstances.

To the extent Plaintiff Dowell alleges that UHM misrepresented that it "would adequately protect Plaintiff's and the Class Members' Private Information" and comply with privacy laws, such contentions are insufficient to state a claim under the Act, particularly in light of Federal Rule of Civil Procedure 9's heightened pleading standard for allegations of fraud.  *See Sasso v. Tesla, Inc.*, 584 F. Supp. 3d 60, 80 (E.D.N.C. 2022) (dismissing UDTPA claims under Rule 9(b)). Plaintiffs fail to identify with any specificity what UHM misrepresented to them (much less the time, place, and identity of the person making the misrepresentation), and also fail to plead sufficient facts establishing "reliance on the misrepresentation."  *Monopoli v. Mercedes-Benz USA, LLC*, No. 1:21-CV-01353-SDG, 2022 WL 409484, at *13 (N.D. Ga. Feb. 10, 2022). Plaintiffs allege only that UHM "engaged in unlawful and unfair acts and practices, with respect to the sale and advertisement of the services paid for by Plaintiff and Class Members." (Compl. ¶ 494.) Plaintiffs also fail to allege that they "affirmatively incorporated the alleged misrepresentation into [their] decision-making process." *Dan King Plumbing Heating & Air Conditioning, LLC v. Harrison*, 2022-NCCOA-27, ¶ 30, 281 N.C. App. 312, 320. Nor have Plaintiffs alleged facts to show that any purported "reliance on [UHM's] 'allegedly false representations [was] reasonable.'" *Id.* Therefore, Plaintiff Dowell has failed to state a claim for a violation of the NCUDTPA.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs claims with prejudice.

Respectfully submitted,

*s/ Laura E. Kogan*
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

LAURA E. KOGAN (0087453)
CAROLINE R. HAMILTON (0100390)
HANNAH LAUBACH (0104600)
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  lkogan@beneschlaw.com
        chamilton@beneschlaw.com
        hlaubach@beneschlaw.com

MICHAEL A. VATIS (2258655)
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone:  646.593.7050
Facsimile:  646.755.3397
Email:  mvatis@beneschlaw.com

*Attorneys for Defendant*
*Union Home Mortgage Corp.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 18th day of December 2025, the foregoing was filed electronically and served upon all counsel of record via the Court ECF electronic filing system.

*/s/ Laura E. Kogan*
Laura E. Kogan