# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| *In re Union Home Mortgage Corp. Data Breach Litigation*, | ) CASE NO. 1:25-CV-1874 )<br>) **DECLARATION OF MARK LANGHANS**<br>)<br>)<br>)<br>) |

I, Mark Langhans, hereby declare as follows:

1. I am over the age of 18, have personal knowledge of the facts stated herein, and am competent to make this Declaration. I submit this Declaration in support of Defendant Union Home Mortgage, Corp.'s ("UHM") Motion to Dismiss.

2. I am the Chief Information Officer at UHM and have been in this role since 2016.

3. In my role as Chief Information Officer, I was involved in UHM's response to the June 2025 data breach incident.

4. Prior to the incident, UHM had implemented and maintained a comprehensive data security program to protect confidential business information, including personal information of its current and former customers and employees.

5. On May 27, 2025, a UHM employee accessed a legitimate third-party business website on which a sophisticated ransomware group (known as "Qilin") had managed to implant malicious software.

6. This software caused the employee's browser to allow a malicious script to install and run malware on the employee's computer.

7. On June 25, 2025, UHM discovered that its computer network had been breached.

8. As part of the breach, the ransomware group was able to compromise other UHM employees' accounts, install ransomware that encrypted parts of UHM's network, and exfiltrate data, including personal information of some UHM customers, employees, and others.

9. The ransomware group then threatened to release the stolen data if UHM did not pay a ransom.

10. UHM paid the ransom demanded by the ransomware group, on the condition that the ransomware group would securely delete the exfiltrated data and not target UHM in the future.

11. The ransomware group subsequently confirmed that the data had been deleted, and provided logs showing the same.

12. Following the data breach, UHM implemented additional measures to prevent further malicious actions, including: web filtering to prevent malware from being downloaded from websites; enhanced endpoint detection and response capability to detect and respond to malware and other cyber threats at network endpoints; improved tools for real-time detection and prevention of attempts to compromise user accounts; and additional tools and measures to detect and prevent unauthorized exfiltration of data.

13. These additional measures went beyond implementation and maintenance of reasonable security procedures and practices and specifically addressed the means by which the ransomware group was able to access UHM's data.

14. UHM's outside counsel hired Charles River Associates ("CRA") to investigate the breach and assist in managing the response, including negotiating with the threat actor.

15. To assist in this litigation, UHM's litigation counsel later re-engaged CRA to conduct an investigation to determine whether any UHM data stolen in the data incident had been posted on the dark web or elsewhere, and whether any of the named Plaintiffs' personal information had been involved in prior breaches at other entities and made publicly accessible.

16. As part of that investigation, UHM provided CRA with data it possessed on the named Plaintiffs so that CRA could use it to conduct its investigation.

17. In doing so, UHM determined that it does not possess certain information on certain Plaintiffs:

   a. UHM does not appear to have a valid email address for Jeremy McMullen. McMullen's email address was listed as "hotmail@hotmail.com" in UHM's database.

   b. UHM also does not have a valid email address for Codey Christopherson.

   c. UHM does not have an email address or phone number for Ikaika San Nicolas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2025.

Signed by:
Mark Langhans
D57A7D35E6C3445...

Mark Langhans

3