## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| *In Re Union Home Mortgage Corp.*<br>*Data Breach Litigation* | Case No. 1:25-cv-1874<br><br>District Judge Solomon Oliver, Jr.<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ............................................................................................2

III.    LEGAL STANDARD ......................................................................................3

IV.     PLAINTIFFS HAVE ARTICLE III STANDING..................................................3

        A.      Plaintiffs Adequately Allege Concrete Injuries ....................................4

                i.      Plaintiffs Adequately Allege Their Data Was Impacted................................5

                ii.     Plaintiffs Adequately Allege Privacy Injuries ..............................7

                iii.    Plaintiffs Adequately Allege a Substantial Risk of Harm ..............................7

                iv.     Plaintiffs Have Independent Standing to Pursue Contract and Quasi-Contract Claims ..........................................................9

                v.      The Alleged Misuse of Private Information is a Concrete Injury................10

        B.      Plaintiffs Adequately Allege Traceability ...........................................10

        C.      Plaintiffs Have Standing to Seek Injunctive Relief ..............................13

        D.      Defendant's Factual Challenge to Standing is Premature........................14

V.      PLAINTIFFS ADEQUATELY STATE CLAIMS FOR RELIEF ....................................16

        A.      Negligence ......................................................................................16

                i.      Plaintiffs Adequately Allege a Duty of Care ................................17

                ii.     Plaintiffs Adequately Allege Breach of Duty ................................21

                iii.    Plaintiffs Adequately Allege Damages Caused by the Data Breach ...........22

        B.      Breach of Implied Contract..............................................................23

        C.      Unjust Enrichment ..........................................................................25

        D.      California Consumer Privacy Act ("CCPA") ......................................28

        E.      Declaratory Judgment and Injunctive Relief ......................................29

        F.      North Carolina Unfair and Deceptive Trade Practice Act ("NCUDTPA")...........29

VI.     CONCLUSION................................................................................................30

CERTIFICATE OF SERVICE ..............................................................................31

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Alcarez v. Akorn, Inc.*,
   99 F.4th 368 (7th Cir. 2024) ................................................................. 10

*Allen v. Wenco Mgmt., LLC*,
   696 F. Supp. 3d 432 (N.D. Ohio 2023)...................................... 4, 5, 8, 10, 18, 27, 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................ 3

*Attias v. CareFirst, Inc.*,
   865 F.3d 620 (D.C. Cir. 2017) .................................................... 10, 12, 13

*Baton v. Ledger SAS*,
   740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................. 22

*Berdyk v Shinde*,
   613 N.E.2d 1014 (Ohio 1993) ........................................................ 21

*Bohnak v. Marsh & McLennan Cos.*,
   79 F.4th 276 (2d Cir. 2023) ...................................................... 7, 8, 9

*Brooks v. Peoples Bank*,
   732 F. Supp. 3d 765 (S.D. Ohio 2024) ................................................. 25

*Cahill v. Mem'l Heart Inst., LLC*,
   2024 WL 4311648 (E.D. Tenn. Sept. 26, 2024) ........................................ 21

*Capiau v. Ascendum Mach., Inc.*,
   2024 WL 3747191 (W.D.N.C. Aug. 9, 2024)............................................ 8, 9, 30

*Carr v. Oklahoma Student Loan Auth.*,
   699 F. Supp. 3d 1241 (W.D. Okla. 2023) ............................................... 19

*Carrier Corp. v. Outokumpu Oyj*,
   673 F.3d 430  (6th Cir. 2012) ........................................................ 15

*Cartwright v. Garner*,
   751 F.3d 752 (6th Cir. 2014) ........................................................ 3

*Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.*,
   537 N.E.2d 624 (1989)............................................................... 23

*Cincinnati v. Beretta U.S.A. Corp.*,
   2002-Ohio-2480 ................................................................ 19, 21

*Clemens v. ExecuPharm Inc.*,
   48 F.4th 146 (3d Cir. 2022) ........................................................................ 8, 20

*Clippinger v. State Farm Auto. Ins. Co.*,
   156 F.4th 724 (6th Cir. 2025) ............................................................................ 9

*Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*,
   2005-Ohio-5409 ................................................................................................ 23

*Crowe v. Managed Care of N. Am. Inc.*,
   2025 WL 2829532 (S.D. Fla. Jan. 21, 2025) .................................................... 29

*Davila v. New Enchantment Grp. LLC*,
   2024 WL 6895566 (D. Ariz. Apr. 25, 2024) .................................................... 24

*Dayton Monetary Assoc. v. Becker*,
   710 N.E.2d 1151 (Ohio Ct. App. 1998) ............................................................ 24

*Dieffenbach v. Barnes & Noble, Inc.*,
   887 F.3d 826 (7th Cir. 2018) ............................................................................ 22

*Doe v. Mission Essential Group, LLC*,
   2024 WL 3877530 (S.D. Ohio Aug. 20, 2024) .................................................... 6

*Douglass v. Salem Cmty. Hosp.*,
   2003-Ohio-4006 (Ct. App.) ............................................................................... 18

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
   2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) .................................................. 16

*Foster v. Health Recovery Servs., Inc.*,
   493 F. Supp. 3d 622 (S.D. Ohio 2020) ....................................................... 26, 27

*Galaria v. Nationwide Mut. Ins. Co.*,
   663 F. App'x 384 (6th Cir. 2016) ......................................................... 5, 8, 9, 11

*Gedeon v. E. Ohio Gas Co.*,
   190 N.E. 924 (Ohio 1934) ................................................................................ 21

*Gentek Building Prods., Inc. v. Sherwin-Williams Co.*,
   491 F.3d 320 (6th Cir. 2007) ............................................................................ 21

*Gordon v. Zeroed-In Tech., LLC*,
   2025 WL 936415 (D. Md. Mar. 26, 2025) ........................................................ 26

*Hall v. Watson*,
   2002-Ohio-3176 (Ct. App.) ............................................................................... 21

*Haney v. Charter Foods N., LLC,*
   747 F. Supp. 3d 1093 (E.D. Tenn. 2024) ............................................................. 8

*Horne v. Flores,*
   557 U.S. 433 (2009) ....................................................................................... 3, 4

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.,*
   2021 WL 5937742 (D.N.J. Dec. 16, 2021) ................................................... 12, 17

*In re Arthur J. Gallagher Data Breach Litig.,*
   631 F. Supp. 3d 573 (N.D. Ill. 2022) ................................................................. 28

*In re Blackbaud, Inc., Customer Data Breach Litig.,*
   2021 WL 2718439 (D.S.C. July 1, 2021) ....................................................... 15, 16

*In re Bon Secours Mercy Health Data Breach Litig.,*
   2025 WL 1827804 (S.D. Ohio July 2, 2025) ............................... 10, 12, 14, 15, 16, 20, 23, 25

*In re Brinker Data Incident Litig.,*
   2020 WL 691848 (M.D. Fla. Jan. 27, 2020) ...................................................... 30

*In re CBIZ Data Breach Litig.,*
   2025 WL 1557033 (N.D. Ohio June 2, 2025) ........................................... 4, 9, 13, 18

*In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.,*
   2025 WL 3693201 (D. Minn. Dec. 19, 2025) .................................................... 14

*In re Equifax, Inc., Customer Data Sec. Breach Litig.,*
   371 F. Supp. 3d 1150  (N.D. Ga. 2019) ............................................................ 19

*In re Eureka Casino Breach Litig.,*
   2024 WL 4253198 (D. Nev. Sept. 19, 2024) ................................................. 28, 29

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*
   440 F. Supp. 3d 447 (D. Md. 2020) ................................................................. 16

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.,*
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ............................................................. 18

*In re MOVEit Customer Data Sec. Breach Litig.,*
   2024 WL 5092276 (D. Mass. Dec. 12, 2024) .................................................... 14

*In re MOVEit Customer Data Sec. Breach Litig.,*
   2025 WL 2179475 (D. Mass. July 31, 2025) .................................................... 27

*In re Nat'l Prescription Opiate Litig.,*
   2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) ................................................. 19

*In re Numotion Data Incident Litig.*,
    2025 WL 57712 (M.D. Tenn. Jan. 9, 2025)................................................................. 8

*In re Rutter's Inc. Data Sec. Breach Litig.*,
    511 F. Supp. 3d 514 (M.D. Pa. 2021) ..................................................................... 20

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ......................................................... 28

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ......................................................... 25

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ........................................................................ 13, 15

*Johnson v. Microsoft Corp.*,
    2005-Ohio-4985.................................................................................................. 25, 26

*Johnson v. Phoenix Mut. Life Ins. Co.*,
    266 S.E.2d 610 (N.C. 1980)...................................................................................... 30

*Koeller v. Numrich Gun Parts Corp.*,
    675 F. Supp. 3d 260 (N.D.N.Y. 2023).................................................................... 21

*Lewert v. P.F. Chang's China Bistro, Inc.*,
    819 F.3d 963 (7th Cir. 2016). ........................................................................ 13, 14

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................... 4

*Lurry v. Pharmerica Corp.*,
    2025 WL 2965642 (W.D. Ky., June 12, 2024)......................................................... 27

*Mason v. Wright Bros. Constr. Co., Inc.*,
    2025 WL 939709 (E.D. Tenn. Mar. 27, 2025) ......................................................... 4

*McLaughlin v. Taylor Univ.*,
    2024 WL 4274848 (N.D. Ind. Sept. 23, 2024) ....................................................... 24

*Mohsen v. Veridian Credit Union*,
    733 F. Supp. 3d 754 (N.D. Iowa 2024).................................................................... 26

*Mosley v. Kohl's Dep't Stores, Inc.*,
    942 F.3d 752 (6th Cir. 2019) ................................................................................. 11

*Mulkey v. RoundPoint Mortg. Servicing Corp.*,
    2021 WL 5804575 (N.D. Ohio Dec. 7, 2021) ......................................................... 18

*Mussivand v. David*,
    544 N.E.2d 265 (Ohio 1989) ................................................................................ 17

*O'Byrne v. Weyerhaeuser Co.*,
    2020 WL 6445832 (S.D. Ohio Nov. 3, 2020) ...................................................... 24

*Parsons v. U.S. Dep't of Just.*,
    801 F.3d 701 (6th Cir. 2015) ...................................................................... 11, 13

*Perry v. Bay & Bay Transp. Servs., Inc.*,
    650 F. Supp. 3d 743 (D. Minn. 2023) .......................................................... 12, 24

*Ramirez v. Paradies Shops, LLC*,
    69 F.4th 1213 (11th Cir. 2023) ....................................................... 6, 13, 17, 22

*Rance v. D.R. Horton, Inc.*,
    316 F. App'x 860 (11th Cir. 2008) ...................................................................... 16

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015). .................................................................... 6, 13

*Rodriguez v. CRG Lynwood LLC*,
    2025 WL 2700614 (E.D. Mich. Sept. 22, 2025) ...................................... 6, 7, 12

*Rodriguez v. Mena Hosp. Comm'n*,
    2023 WL 7198441 (W.D. Ark. Nov. 1, 2023) ................................................... 17

*Savidge v. Pharm-Save, Inc.*,
    727 F. Supp. 3d 661 (W.D. Ky. 2024) ........................................................ 5, 7, 8

*Skurka Aero., Inc. v. Eaton Aero., L.L.C.*,
    2011 WL 1135946 (N.D. Ohio 2011) ................................................................. 28

*Smith v. Lincoln Elec. Co.*,
    2024-Ohio-5209 (Ct. App.) .............................................................................. 29

*Springer v. Cleveland Clinic Emp. Health Plan Total Care*,
    900 F.3d 284 (6th Cir. 2018) ............................................................................ 20

*Stinson v. Yum! Brands, Inc.*,
    2025 WL 2755879 (W.D. Ky. July 17, 2023) ..................................................... 9

*Stollenwerk v. Tri-W. Health Care All.*,
    254 F. App'x 664 (9th Cir. 2007) ...................................................................... 29

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ................................................................... 5

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................... 8

*Tjahjono v. Westinghouse Air Brake Techs. Corp.*,
    2024 WL 1287085 (W.D. Pa. Mar. 26, 2024) ....................................................... 26

*Toretto v. Donnelley Fin. Sols., Inc.*,
    583 F. Supp. 3d 570 (S.D.N.Y. 2022) .................................................................. 24

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ....................................................................................... 4, 7

*Tucker v. Marietta Area Health Care, Inc.*,
    2023 WL 423504 (S.D. Ohio Jan. 26, 2023) ........................................... 23, 26, 27

*Van v. LLR, Inc.*,
    962 F.3d 1160 (9th Cir. 2020) ............................................................................ 10

*Wallace v. Ohio Dep't of Com.*,
    2002-Ohio-4210 ................................................................................................ 17

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) ..................................................................... 8, 10, 11

*Williamson v. Tucker*,
    645 F.2d 404 (5th Cir. 1981) ............................................................................. 16

**STATUTES**

15 U.S.C. § 45(a)(1) .............................................................................................. 30

28 U.S.C. § 2201 ................................................................................................... 29

Cal. Civ. Code § 1798.150(b) ................................................................................ 28

N.C. Gen. Stat. Ann. § 75-1.1 ............................................................................... 30

Ohio Rev. Code § 1349.19(A)(1)(a) ........................................................................ 6

Ohio Rev. Code § 1349.19(B)(1) ............................................................................. 6

Ohio Rev. Code § 1354.01 .................................................................................... 18

**RULES**

Fed. R. Civ. P. 12 ................................................................................................... 1

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 3

I.    **INTRODUCTION**

Defendant Union Home Mortgage Corporation turns the Fed. R. Civ. P. 12 standard on its head, construing the facts in a light most favorable to Defendant, faulting Plaintiffs for a lack of proof at the pleading stage, and going so far as to smuggle "facts" into the record that it gathered but that have not been tested through discovery. It also downplays the seriousness of data breaches, shrugging its shoulders and insisting that "[e]ven the best cybersecurity measures" cannot prevent breaches. MTD at PageID 215. With that cavalier attitude, it asks this Court to excuse it of any duty, effectively saying that no company that collects data, even one that collects the most sensitive data that consumers and employees possess, need bother protecting it.

Fortunately, courts within this Circuit and beyond reject this novel immunity-type argument. Data is a form of valuable currency in our modern age, with companies reaping substantial profits from their use, analysis, and selling of personal data. When data breaches happen, courts recognize that a complaint states a claim when it presents claims similar to those in the complaint in this case. There are, to be sure, issues about causation and damages that the parties can fight over later, but at this stage of the case, the battle that Defendant wants to wage is simply premature. Consistent with this Court's own precedent, this Court should find that Plaintiffs plausibly state claims that survive Rule 12 scrutiny.

Likewise, Defendant presents a standing argument, but does so in derogation of precedent from this Court and the Sixth Circuit. Based on that authority, Plaintiffs readily plead the necessary predicates for Article III standing—concrete injuries traceable to Defendant's conduct that are redressable by a favorable ruling. Perhaps cognizant that this Court has already ruled similarly, Defendants rush to submit an expert "report" designed to pressure the Court to rule on the merits of this case before an answer is even filed. This maneuver, without the benefit of any discovery,

should be rejected by the Court. The Court should accordingly find that Plaintiffs have standing and have presented valid claims for relief.

## II.    BACKGROUND

This case stems from a data security incident that Defendant, a mortgage lending company, initially detected in June 2025 (the "Data Breach"). Consolidated Complaint ("Compl."), Doc. 12 ¶ 5. A month later, Defendant confirmed that this unauthorized access included Plaintiffs' personally identifiable information (referred to herein as "PII"). *Id.* ¶ 6. For tens of thousands of individuals, the impacted PII included names, loan numbers, Social Security numbers, driver's license or government-issued ID card numbers, and dates of birth. *Id.* ¶¶ 7, 100-01. After determining the impacted data sets, Defendant issued a public disclosure of the Data Breach and began issuing notifications that indicated Plaintiffs' PII was accessed and that they faced a continuing risk of identity theft and fraud. *Id.* ¶¶ 8, 23, 27, 31, 35, 39, 43, 47, 51, 55, 59, 63, 67, 71, 75, 294-319. Defendant has since confirmed that a notorious ransomware group known as Qilin exfiltrated Plaintiffs' PII, meaning that their PII rests in the hands of criminals. *See* MTD at PageID 216; Compl. ¶¶ ¶ 382, 385.

As a condition of obtaining loan services or employment, Defendant requires that individuals (including Plaintiffs) entrust it with their highly sensitive PII. Compl. ¶¶ ¶ 22, 26, 30, 34, 38, 42, 46, 50, 54, 58, 62, 66, 70, 74. Moreover, as part of its regular course of business, Defendant voluntarily obtains the PII of indirect parties applying for mortgages and/or loans. *Id.* ¶¶ 38, 54. Plaintiffs provided their PII to Defendant with the reasonable expectation and mutual understanding that it would keep their information confidential and secure from unauthorized access. *Id.* ¶ 91. However, in derogation of this duty, Defendant instead stored Plaintiffs' data without adequate encryption or other fundamental security procedures, creating the vulnerabilities

2

that permitted the Data Breach to occur. *Id.* ¶¶ 13-14, 418, 420. As a result, as discussed in the standing section below, Plaintiffs have suffered numerous injuries, including a loss of privacy, a substantial risk of harm that requires Plaintiffs to spend time and money mitigating their risk, a lost benefit of their implied bargain for data security, and the misuse of their PII after the Data Breach for fraud and identity theft. *See* Compl. ¶¶ 127-293.

## III. LEGAL STANDARD

Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (internal citation omitted). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.*

If the Court finds that at least one plaintiff has standing, it need not consider the issue any further at this stage. *Horne v. Flores*, 557 U.S. 433, 446 (2009).

## IV. PLAINTIFFS HAVE ARTICLE III STANDING

Plaintiffs plausibly allege the basic elements of standing: they "present an injury that is

concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Id.* at 445. Apparently acknowledging this, Defendant decides to inject evidence outside the Complaint to conjure up a standing problem (while conceding redressability). The Court, however, should reject these measures.

### A.  Plaintiffs Adequately Allege Concrete Injuries

Plaintiffs plausibly allege concrete injuries (and a risk of future injuries) that suffice to support claims for damages and injunctive relief. To have standing, a plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To determine whether a plaintiff has suffered a concrete harm, courts assess whether the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). After *TransUnion*, this Court held that the theft of sensitive personal information like Social Security numbers causes concrete privacy and risk-based injuries. *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432, 437-38 (N.D. Ohio 2023) (Oliver, J.) ("[T]he weight of post-*TransUnion* authority establishes that Allen's alleged privacy injury is sufficiently concrete for Article III purposes."). Inexplicably, Defendant fails to address that opinion.

*Allen* fits comfortably alongside other data breach standing precedent within this Circuit. *See In re CBIZ Data Breach Litig.*, 2025 WL 1557033, at *5 (N.D. Ohio June 2, 2025) ("At a minimum, Plaintiffs have alleged already realized injuries through invasion of privacy, loss of benefit of the bargain, emotional stress, and the expenditure of time and resources to monitor and take other preventative measures to protect themselves from a risk future harm."); *Mason v. Wright Bros. Constr. Co., Inc.*, 2025 WL 939709, at *7 (E.D. Tenn. Mar. 27, 2025) (citing *Allen* and

holding that "privacy harm and an increased risk of identity theft are cognizable injuries"); *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 675-94 (W.D. Ky. 2024) (reviewing circuit-level authority and finding plaintiffs had standing for similar reasons). As detailed below, the Court should look past Defendant's outlier cases and instead follow *Allen*, the authority that *Allen* relied on, and the subsequent authority cited herein.

### i.  *Plaintiffs Adequately Allege Their Data Was Impacted*

It is plausible that Plaintiffs' PII was stolen in the Data Breach—indeed, by paying a ransom, Defendant concedes the point. Nevertheless, Defendant ducks behind self-serving language in its letters to Plaintiffs. *See* MTD at PageID 220 (insisting that the notice letters only demonstrate that Plaintiff's data was "potentially" impacted). However, the notice letters did not explain how Defendant would know if misuse occurred—and even the letters themselves encouraged victims to report fraud to various other authorities, rather than to Defendant directly. *See* Compl. ¶¶ 95-97, 106. Furthermore, several Plaintiffs have in fact suffered fraud and other misuse of their PII following the Data Breach. Compl. ¶¶ 131, 142-43, 153-54, 164-65, 175-76, 187, 197, 208-09, 219, 230-31, 241-42, 252, 255, 265, 277 (PII on dark web); 175, 179, 187-88, 220, 241, 254, 267, 279 (fraud/identity theft). The common thread amongst these Plaintiffs is that they all suffered identity theft or data misuse shortly after receiving notice of the same data breach. *Cf. Stollenwerk v. Tri-W. Health Care All.*, 254 F. Appx. 664, 668 (9th Cir. 2007) ("[P]roximate cause is supported not only by the temporal, but also by the *logical*, relationship between the two events.") (emphasis in original).

Defendant certainly appeared to believe Plaintiffs' PII was stolen in the Data Breach. Why else would Defendant send notification letters and offer limited credit monitoring subscriptions? *Compare* Compl. ¶¶ 104-06 *with Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th

Cir. 2016) ("Nationwide seems to recognize the severity of the risk, given its offer to provide credit-monitoring and identity-theft protection for a full year."). Indeed, "[i]t is unlikely that it did so because the risk is so ephemeral that it can safely be disregarded." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694 (7th Cir. 2015).[1] Failing to acknowledge this commonsense reality, Defendant cites *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 881 (N.D. Ill. 2014) and *Doe v. Mission Essential Group, LLC*, 2024 WL 3877530 (S.D. Ohio Aug. 20, 2024), but in those cases, the plaintiff admitted he did not receive a data breach letter (*Strautins* at n.18) or failed to make any plausible allegations that a data breach occurred (*Doe*). *Cf.* Compl. ¶¶ 23-24, 27-28, 31-32, 35-36, 39-40, 43-44, 47-48, 51-52, 55-56, 59-60, 63-72.

Other courts in the Sixth Circuit have rejected similar challenges at the pleading stage. *See, e.g., Rodriguez v. CRG Lynwood LLC*, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025). In that case, the court recognized that "the wording of the breach letter complicates the analysis a bit" because it only stated that "data was *potentially* accessed and acquired by a person not authorized to view [it]." *Id.* at *3 (emphasis added). Despite this language, the court found that the plaintiff was entitled to the benefit of the doubt at the pleading stage. *Id.* ("Rodriguez is entitled to the benefit of the doubt, and so the Court will infer that her data was accessed. After all, Lynwood's investigation caused it to send Rodriguez the data-breach letter—so certainly Lynwood thought Rodriguez might be at risk.") (internal citation omitted). The same holds true here. *See Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023) ("[D]ata breach cases present unique challenges for plaintiffs at the pleading stage. A plaintiff may know only what the company has disclosed in its notice of a data breach…. We cannot expect a plaintiff in Ramirez's position to

---

[1] For example, Ohio (like most states) only requires notice letters to be sent upon the discovery of a data breach "that causes, reasonably is believed to have caused, or reasonably is believed will cause a material risk of identity theft or other fraud to the person or property of a resident of this state." Ohio Rev. Code § 1349.19(A)(1)(a); *see also* Ohio Rev. Code § 1349.19(B)(1).

plead with exacting detail ….").

### ii.  Plaintiffs Adequately Allege Privacy Injuries

As this Court and others have recognized, "a privacy injury stemming from a data breach 'bears some relationship to a well-established common-law analog: public disclosure of private facts.'" *Allen*, 696 F. Supp. 3d at 437 (quoting *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 285 (2d Cir. 2023)); *see also Savidge*, 727 F. Supp. 3d at 691-92 (following similar authority and holding that a data breach caused concrete injury analogous to public disclosure of private facts); *Rodriguez*, 2025 WL 2700614, at *4 (finding an injury analogous to intrusion upon seclusion in the data breach context). This case is no different: Plaintiffs allege their Social Security numbers and other PII were exfiltrated by cybercriminals. *See, e.g.,* Compl. ¶¶ 7, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68. Therefore, like the Court found in *Allen*, Plaintiffs' "alleged privacy [injuries are] sufficiently concrete for Article III purposes." *Allen*, 696 F. Supp. 3d at 437.

Defendant does not address this Court's holding in *Allen*, the authority on which it relies, or the legion of subsequent opinions from courts that reach similar conclusions. Instead, Defendant curiously states that a privacy injury cannot confer standing without "tangible harm." MTD at PageID 222. This is not the law. *Allen*, 696 F. Supp. 3d at 437; *TransUnion*, 594 U.S. at 425 ("Various intangible harms can also be concrete…. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."). Presented with substantially similar circumstances to *Allen*, the Court should reaffirm its holding and find that Plaintiffs adequately allege concrete privacy injuries analogous to injuries caused by a public disclosure of private facts or intrusion upon seclusion.

### iii.  Plaintiffs Adequately Allege a Substantial Risk of Harm

Plaintiffs also have standing to seek damages based on their substantial risk of imminent

harm, along with the independent injuries that the substantial risk of harm has or will cause (like time or money to monitor accounts and mitigate harm). "An allegation of future injury may suffice if … there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).

It is well established that present or future injuries caused by a substantial risk of harm after a data breach confer standing. *Galaria*, 663 F. App'x at 388 ("Here, Plaintiffs' allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation.");[2] *Bohnak*, 79 F.4th at 289–90 (holding that an "alleged injury arising from the increased risk of harm *is* cognizable for standing purposes") (emphasis in original); *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 376 (1st Cir. 2023) (holding that "the risk of future [PII] misuse" confers standing); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152–58 (3d Cir. 2022) (finding standing based on identity-theft risk). In *Allen*, this Court found *Bohnak, Webb, Clemens*, and *Galaria* persuasive, holding that, in addition to an alleged privacy injury, the plaintiff's "increased risk of identity theft" gave him standing to sue. *Allen*, 696 F. Supp. 3d at 438. A consistent ruling is warranted here.

Notably, cybercriminals targeted and seized Plaintiffs' PII—this wasn't the product of an accidental disclosure. Compl. ¶¶ 120-21, 327-28. "Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Galaria*, 663 F. Appx. at 388. This is the "most important" indicator that a substantial risk of imminent harm exists. *Savidge*, 727 F. Supp. 3d at 683-84. However, the risk is also obvious where, like here, "some portion of the compromised

---

[2] Contrary to Defendant's memorandum, "*TransUnion* does not invalidate *Galaria*." *In re Numotion Data Incident Litig.*, 2025 WL 57712, at *5 (M.D. Tenn. Jan. 9, 2025); *see also Haney v. Charter Foods N., LLC*, 747 F. Supp. 3d 1093, 1105 n.3 (E.D. Tenn. 2024) (collecting cases).

dataset has already been misused . . . or the data exposed is sensitive such that it presents a heightened risk of identity theft or fraud." *Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *8 (W.D.N.C. Aug. 9, 2024) (collecting circuit-level authority); *see* Compl. ¶¶ 165, 179, 187-88, 220, 241, 255, 267, 279; *Bohnak*, 79 F.4th at 289 ("Bohnak alleges that the PII taken by the hackers includes her name and SSN. This is exactly the kind of information that gives rise to a high risk of identity theft.") (internal citation omitted). Thus, as the Court found in *Allen*, a substantial risk of harm exists, and Plaintiffs have standing to seek past and future damages caused by that risk of harm (like time or money to mitigate the risk of harm). *See Allen*, 696 F. Supp. 3d at 438; *Bohnak*, 79 F.4th at 289–90; *Galaria*, 663 F. App'x at 388.

### iv. Plaintiffs Have Independent Standing to Pursue Contract and Quasi-Contract Claims

Plaintiffs have independent standing from the lost benefit of their implied bargain for data security. *See* Compl. ¶¶ 19, 435-55; *Clippinger v. State Farm Auto. Ins. Co.*, 156 F.4th 724, 733 (6th Cir. 2025) ("[W]e are convinced by the caselaw supporting the proposition that, even without a claim of damages, breach of contract is a concrete injury in fact for standing purposes. Ultimately, we hold that private rights created by valid contracts between private parties are the kind of rights that have traditionally been cognizable in American courts.") (internal citations omitted); *see also Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) ("Like any private contract claim, his injury does not depend on allegation of financial loss. His injury is that he was denied the benefit of his bargain."); *In re CBIZ*, 2025 WL 1557033, at *5, *6 n.4 (recognizing that injury from a "loss of the benefit of the bargain" confers standing and that it "would arise under the theory of unjust enrichment"). Therefore, the Court should find that Plaintiffs have independent standing to pursue their claims for both breach of implied contract and unjust enrichment due to the lost benefit of their bargain.

### v. *The Alleged Misuse of Private Information is a Concrete Injury*

Defendant takes an unduly narrow view of identity theft and fraud, arguing Plaintiffs do not allege "that any of the alleged attempted fraudulent activity was actually successful" or caused them to suffer out of pocket monetary loss. MTD at PageID 224. Plaintiffs allege their PII was stolen and misused because of the Data Breach. Compl. ¶¶ 131, 142-43, 153-54, 164-65, 175-76, 179, 187-88, 197, 208-09, 219-20, 230-31, 241-42, 252, 254-55, 265, 267, 277, 279. And the misuse of PII by itself confers standing. *Attias v. CareFirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury."); *Webb*, 72 F.4th at 374 ("We reject IWP's argument that the alleged actual misuse is not itself a concrete injury absent even more resulting harm to Webb."); *accord In re Bon Secours Mercy Health Data Breach Litig.*, 2025 WL 1827804, at *5 (S.D. Ohio July 2, 2025) (Cole, J.) (similar, citing *Webb* and *Attias*).

Furthermore, although a tangible injury is not required (intangible injury will suffice), the Plaintiffs who (even temporarily) lost access to money or credit as a result of the Data Breach have suffered tangible economic injuries related to the lost time value of money. *See Alcarez v. Akorn, Inc.*, 99 F.4th 368, 374 (7th Cir. 2024) ("[W]e have held that a small loss caused by a brief inability to use a credit card after a data breach confers standing.") (collecting data breach cases); *Van v. LLR, Inc.*, 962 F.3d 1160, 1164 (9th Cir. 2020) ("In sum, we hold that the temporary loss of use of one's money constitutes an injury in fact for purposes of Article III."). For these reasons, the Plaintiffs who suffered from the misuse of their PII after the Data Breach have suffered additional tangible and intangible injuries that confer standing at this stage.

### B. Plaintiffs Adequately Allege Traceability

The Complaint plausibly pleads that Plaintiffs' injuries are fairly traceable to Defendant's

conduct causing the Data Breach. Traceability "is not focused on whether the defendant caused the plaintiff's injury in the liability sense, … because causation to support standing is not synonymous with causation sufficient to support a claim." *Galaria*, 663 F. App'x at 390 (internal quotations omitted). "In the nebulous land of 'fairly traceable,' where causation means more than speculative but less than but-for, the allegation that a defendant's conduct was a motivating factor in the third party's injurious actions satisfies the requisite standard." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 714 (6th Cir. 2015).[3] Plaintiffs plausibly allege their injuries are fairly traceable to Defendant because, but for its negligence, the Data Breach and Plaintiffs' injuries would not have occurred. Compl. ¶¶ 285-291, 307, 350, 388, 453-54, 466-70, 474.

The Sixth Circuit found sufficient causation in *Galaria* when the plaintiffs alleged that "but for [defendant's] allegedly lax security, the hackers would not have been able to steal [the plaintiff's] data." *Galaria*, 663 F. App'x at 390; *see also Webb*, 72 F.4th at 377 ("The complaint alleges that IWP's actions led to the exposure and actual or potential misuse of the plaintiffs' PII, making their injuries fairly traceable to IWP's conduct."). Plaintiffs allege the same circumstances here. *See* Compl. ¶¶ 15, 18, 110-20, 334, 385. Defendant invites the Court to ignore Plaintiffs' allegations and find that the Data Breach was not traceable to its conduct because its own privacy policy provides that it maintains industry standard safeguards and encryption. MTD at PageID 226. But the whole point of this lawsuit is that Defendant did *not* protect Plaintiffs' data like it should have. And while Defendant disputes the point, this simply raises issues of fact not suitable for resolution at the pleading stage. *Galaria*, 663 F. App'x at 390; *Webb*, 72 F.4th at 377.

---

[3] Contrary to Defendant's memorandum, Plaintiffs do not need to show a "substantial likelihood" that their injuries were caused by the Data Breach—only that it is plausible. *Compare* MTD at PageID 225 *with Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 758 (6th Cir. 2019) ("In the first place, the district court held Mosley to a higher burden of proof than is required at the pleadings stage by demanding a 'credible,' rather than a 'plausible,' plan to return to the stores.").

Moreover, common sense supports the notion that privacy-related injuries, the substantial risk of harm, and lost benefit of bargain are all traceable to the Data Breach. *See, e.g., Rodriguez*, 2025 WL 2700614, at *6 ("Rodriguez's alleged privacy injury suffices for standing. And, according to allegations the Court must currently take as true, that injury occurred when hackers breached Lynwood's (or Excelerate's) computers. So that injury is traceable to the Lynwood data breach as opposed to some other data breach."). Plaintiffs' allegations of fraud and identity theft are more fact-intensive. *See, e.g.,* Compl. ¶¶ 131, 142-43, 153-54, 164-65, 175-76, 179, 187-88, 197, 208-09, 219-20, 230-31, 241-42, 252, 254-55, 265, 267, 277, 279 (fraud, identity theft, and dark web publication). However, the analysis at this stage remains straightforward. *See Attias*, 865 F.3d at 629 ("Because we assume, for purposes of the standing analysis, that plaintiffs will prevail on the merits of their claim that CareFirst failed to properly secure their data and thereby subjected them to a substantial risk of identity theft, we have little difficulty concluding that their injury in fact is fairly traceable to CareFirst.") (internal citation omitted).

Bolstering traceability, Plaintiffs allege they are generally careful about protecting their data and yet they suffered identity theft or other data misuse shortly after the Data Breach. *See id.* ¶¶ 127, 131-32, 138, 142-43, 149, 153-54, 160, 164-65, 171, 175-76, 179, 183, 187-88, 193, 197-98, 204, 207-09, 215, 219-20, 226, 230-31, 237, 241-42, 248, 252-55, 261, 265-67, 273, 277-79.[4] Numerous courts have concluded that similar (or lesser) allegations demonstrate traceability at the pleading stage of a data breach case. *See, e.g., Mercy Health*, 2025 WL 1827804, at *5; *Attias*, 865

---

[4] It is also well established that the allegedly stolen data enables access to existing financial accounts or opening new ones. *Perry v. Bay & Bay Transp. Servs., Inc.*, 650 F. Supp. 3d 743, 751 (D. Minn. 2023) ("[T]he compromised PI included information such as social security numbers, which could ostensibly result in opening unauthorized accounts."). Any argument to the contrary should be reserved for summary judgment or trial. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *12 (D.N.J. Dec. 16, 2021) ("Defendants' argument that the specific information Plaintiffs provided was insufficient to allow criminals to commit identity theft is a question of fact more appropriately resolved on summary judgment or at trial.").

F.3d at 629; *Remijas*, 794 F.3d at 696; *In re Zappos.com, Inc.*, 888 F.3d 1020, 1029–30 (9th Cir.

2018) (abrogated on other grounds); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969

(7th Cir. 2016). Traceability is equally (if not more) plausible in this case.

### C. Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs have demonstrated standing to seek injunctive relief by alleging that their PII

remains unprotected in Defendant's possession, subjecting Plaintiffs to a substantial risk of harm

that is independent from the risk of harm posed by the already-occurring Data Breach. Compl.

¶¶ 7, 12, 15, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 68, 72, 76. Defendant factually disagrees,

characterizing Plaintiffs' allegations as too conclusory to allege a substantial risk of harm that a

second data breach will occur. MTD at PageID 227. However, as explained herein, Plaintiffs have

adequately alleged that Defendant's inadequate security was a cause of the Data Breach. *See*

*Parsons*, 801 F.3d at 714 ("the allegation that a defendant's conduct was a motivating factor in the

third party's injurious actions satisfies the requisite standard"). Defendant's notices to Plaintiffs

did not identify the measures it implemented to remedy the deficiencies that led to the Data Breach.

At the pleading stage, the Court should give Plaintiffs the benefit of the doubt that Defendant's

inadequate security continues—not the other way around. *See Ramirez*, 69 F.4th at 1220–21

(plaintiffs are not required to plead inadequate security measures with specificity).

This District recently recognized that similar allegations confer standing at the pleading

stage after a data breach. *See In re CBIZ* 2025 WL 1557033, at *5 ("In addition, Plaintiffs seek

injunctive relief that is aimed at preventing or reducing the likelihood of future harm made possible

by CBIZ's alleged failures…. Therefore, even if some, or all, of the alleged injuries fall away

during the course of discovery and other pre-trial proceedings, the allegations are sufficient to

establish standing at this point in the litigation."). Even *Mercy Health*, which Defendant cites for

support that Plaintiffs lack standing to seek injunctive relief, recognized that data breach victims under analogous circumstances possess standing from a data breach that has already occurred to seek injunctive relief in the form of lifelong credit monitoring. *Mercy Health*, 2025 WL 1827804, at *7 ("Admittedly, the third version of injunctive relief Plaintiffs seek—requiring Bon Secours to provide them with credit monitoring and identity theft protection for life— could perhaps redress, to some extent, the imminent risk of identity theft that they face because of the already-occurred data breach. The Court is thus satisfied that Plaintiffs have standing to seek this type of injunctive relief alone."). Therefore, at the very least, Plaintiffs have standing to seek injunctive and declarative relief related to the need for ongoing credit and identity theft monitoring services.

### D. Defendant's Factual Challenge to Standing is Premature

Defendant's factual challenge to standing fails as at this stage. Defendant asserts that Plaintiffs' PII has been disclosed in other data breaches, but "[m]erely identifying potential alternative causes [of the harm] does not defeat standing." *Lewert*, 819 F.3d at 969. Defendant is also misguided in its assumption that the payment of a ransom obviates the risk of harm—it does not. *In re MOVEit Customer Data Sec. Breach Litig.*, 2024 WL 5092276, at *6 (D. Mass. Dec. 12, 2024) ("The Court agrees with Plaintiffs that a ransomware attack, even when a payment has been made, does not render it per se implausible that Plaintiffs face an ongoing risk of harm."); *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, 2025 WL 3693201, at *6 (D. Minn. Dec. 19, 2025) ("Defendants contend that UHG's ransom payment eliminates this risk of future harm. The Court disagrees."). And even if it did, this would not affect Plaintiffs' privacy injuries or the lost benefit of their bargain, both of which occurred when their data was exfiltrated.

Regardless, it is premature to consider these points at the pleading stage because they overlap with the merits of Plaintiffs' claims. "[A] district court engages in a factual inquiry

regarding the complaint's allegations *only* when the facts necessary to sustain jurisdiction *do not implicate the merits of the plaintiff's claim*." *Gentek Building Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (emphasis added). "In other words, the district court is prohibited from making factual findings with respect to a jurisdictional issue when such a finding would adversely affect the merits of the plaintiff's case." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 443–44 (6th Cir. 2012). "When 'an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should *find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* at 444 (emphasis in original) (quoting *Gentek,* 491 F.3d at 330). Otherwise, it would throw open the door to every defendant filing an affidavit to the effect that the plaintiff should lose, thereby convincing the court to dismiss the case for want of standing.

The issue of standing in this case plainly overlaps with merits issues like causation and damages. *Allen*, 696 F. Supp. 3d at 437 ("The doctrine of standing … is closely related to damages."); *Mercy Health*, 2025 WL 1827804, at *10 ("For the same reasons that Plaintiffs satisfied the traceability element for Article III standing, they likewise exceed the plausibility threshold for the causation element of their negligence claim."). With this in mind, courts correctly decline to address factual challenges to data breach cases at the pleading stage. *See, e.g., In re Zappos.com*, 888 F.3d at 1029 ("That hackers might have stolen Plaintiffs' PII in unrelated breaches, and that Plaintiffs might suffer identity theft or fraud caused by the data stolen in those other breaches (rather than the data stolen from Zappos), is less about standing and more about the merits of causation and damages."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, 2021 WL 2718439, at *8 (D.S.C. July 1, 2021) ("As Blackbaud's factual challenge to the traceability requirement of Article III standing involves facts that are intertwined with the merits of Plaintiffs'

claims, the court will not consider Blackbaud's factual attack at this juncture.")[5]

Lastly, Defendant's fact-based challenge to standing fails because Plaintiffs have not had an opportunity to conduct discovery or prepare an expert report. Even in rare instances where a factual challenge at this stage is appropriate, a court "must provide the plaintiff with an opportunity for discovery and for a hearing that 'is appropriate to the nature of the motion to dismiss.'" *Rance v. D.R. Horton, Inc.*, 316 F. App'x 860, 863 (11th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 467 (D. Md. 2020) ("While Defendants may ultimately show, after the opportunity for discovery, that the alleged injuries are not caused by their data breach, it is premature to dismiss Plaintiffs' claims on grounds of traceability."); *Finesse Express, LLC v. Total Quality Logistics, LLC*, 2021 WL 1192521, at *5 (S.D. Ohio Mar. 30, 2021) ("Defendant is free to litigate at a later stage … whether the data breach caused Plaintiffs' [injuries]").

This case is not the exception: Plaintiffs will be prejudiced if forced to respond to Defendant's motion without an opportunity to conduct discovery, retain an expert, and prepare an expert report. Under the circumstances, the Court should defer Defendant's factual challenge to standing until a later stage of the case.

## V.    Plaintiffs Adequately State Claims for Relief[6]

### A.  Negligence

Plaintiffs adequately allege each of the elements of negligence under Ohio law, consistent

---

[5] Defendant states that "[t]he ransomware group subsequently confirmed that the data had been deleted, and provided logs showing the same." Doc. 15-2 at PageID 249, ¶ 11. However, it has not produced those "logs" or other persuasive evidence that all copies have been deleted. Nor could it (which is why the "ransom" defense fails legally as well).

[6] Defendant concedes that Ohio law applies to Plaintiffs' common law claims at the pleading stage. *See* MTD at PageID 230 n.7; *see also Mercy Health*, 2025 WL 1827804, at *8 (the defendant's "residence—and more specifically, its principal place of business," which in this case is Ohio, provides the applicable common law at the pleading stage of a data breach case).

with courts confronting data breach cases. Under Ohio law, a negligence claim requires (1) an existing legal duty, (2) a breach of that duty, and (3) an injury proximately stemming from that breach. *Wallace v. Ohio Dep't of Com.*, 2002-Ohio-4210, ¶ 22.

### i. Plaintiffs Adequately Allege a Duty of Care

A corporation like Defendant that regularly solicits and maintains sensitive personally identifiable information undertakes a duty to protect the integrity of that data. "There is no formula for ascertaining whether a duty exists. Duty is the court's expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989) (cleaned up). But first and foremost, "the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Wallace*, 2002-Ohio-4210, at ¶ 23.

It was foreseeable to Defendant that Plaintiffs' PII would be vulnerable to cyberattacks if it failed to implement adequate protections. *See* Compl. ¶¶ 13-14, 110-18; *Ramirez*, 69 F.4th at 1220 ("Drawing on our judicial experience and common sense, we can reasonably infer that a company of Paradies's size and sophistication—especially one maintaining such an extensive database of prior employees' PII—could have foreseen being the target of a cyberattack."); *Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *4 (W.D. Ark. Nov. 1, 2023) ("Mena should be able to 'reasonably foresee an appreciable risk of harm to others' if it has inadequate security measures."). Applying similar principles, courts have concluded that entities collecting Social Security numbers and other sensitive data have a duty to protect it from foreseeable harm. *See, e.g., In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) (it is "axiomatic" under the law of Ohio and other states that "a

17

defendant has a duty to protect a plaintiff against foreseeable harm" from a data breach).

Furthermore, it is well established that "when one undertakes a duty voluntarily, and another reasonably relies on that undertaking, the volunteer is required to exercise ordinary care in completing the duty." *Douglass v. Salem Cmty. Hosp.*, 2003-Ohio-4006, ¶ 74 (Ct. App.). "This theory of negligence does not require proof of a special relationship between the plaintiff and the defendant." *Id.* Instead, it "follows the general rules for finding negligence, with the addition of one extra element of proof, that of reasonable reliance by the plaintiff on the actions of the defendant." *Id.* Courts have found that this principle, known elsewhere as the "undertaker's doctrine," fits neatly within the confines of a data breach analysis, creating a duty to exercise reasonable care against foreseeable harm. *See, e.g., In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1223 (S.D. Fla. 2022) ("[T]heir duty to safeguard Plaintiffs' … PII fits nicely within Florida's existing undertaker's doctrine."). Defendant established a duty under the same principles by voluntarily soliciting and collecting Plaintiffs' PII, thereby leaving Plaintiffs at Defendant's mercy for data protection. Compl. ¶¶ 10, 91-92, 123, 405-19.

Although there is no express statutory duty under Ohio law to protect personal information in this context, Ohio law does provide a safe harbor for businesses that maintain industry standard security measures. *See* Ohio Rev. Code § 1354.01. As this District previously recognized, it follows that "the law also presumes that such covered businesses have a duty to protect such data." *Mulkey v. RoundPoint Mortg. Servicing Corp.*, 2021 WL 5804575, at *3 (N.D. Ohio Dec. 7, 2021) (declining to dismiss a data breach case against a mortgage servicer at the pleading stage); *accord In re CBIZ*, 2025 WL 1557033, at *6  ("The fact that a statute provides an affirmative statutory defense against breach of data claims implies that the law recognizes a potential cause of action for such claims."). Absent a common law duty, there would be no need for the safe harbor statute.

The fact that *some* Plaintiffs lack a direct relationship with Defendant does not prevent their negligence claims. *See, e.g., Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, ¶ 19 (finding a duty despite the lack of a direct or special relationship); *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1248 (W.D. Okla. 2023) (there is a "common law duty for the holder of sensitive information to safeguard it, regardless of the data holder's privity with the individual") (collecting cases); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1166, 1172 (N.D. Ga. 2019) ("[E]ntities that collect sensitive, private data from consumers and store that data on their networks have a duty to protect that information"). Thus, Defendant's duty applies to all individuals who provided PII to apply for and obtain loans.

To be sure, without a special relationship, there is generally no duty to control the actions of third parties. However, Plaintiffs do not seek to hold Defendant liable simply because third parties committed criminal acts—Defendant is liable for its own negligence in creating the security risks that were exploited. Compl. ¶¶ 16-17. Under these circumstances, the Supreme Court of Ohio has explained that a plaintiff is not required to allege a special relationship. *See Beretta*, 2002-Ohio-2480, at ¶ 19 ("[T]he negligence issue before us is not whether appellees owe appellant a duty to control the conduct of third parties. Instead, the issue is whether appellees are themselves negligent by manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market that results in foreseeable injury. Consequently, the 'special relationship' rule is not determinative of the issue presented here."); *accord In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018) (following *Beretta* and holding that "Defendants, like all reasonably prudent persons, have a duty 'to not expose Plaintiffs to an

unreasonable risk of harm.'").[7]

Lastly, although a special relationship is not required, that is exactly what Plaintiffs have alleged. "Ohio courts do recognize an employer's duty to protect its employees when the employer 'kn[e]w or should have known that there was a substantial risk of harm to the employees on the premises of the business that are in the possession and control of the owner.'" *Mercy Health*, 2025 WL 1827804, at *9 n.6 (quoting *Smith v. Lincoln Elec. Co.*, 2024-Ohio-5209, ¶ 12 (Ct. App.)). Defendant acknowledges that businesses owe a similar duty of care to customers who are invitees on its premises. MTD at PageID 232. The duty of control over criminal activity on Defendant's premises extends to the security of data in its network because, like a physical premises, the employer has the sole means of control and security over its data systems. *See In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 529 (M.D. Pa. 2021) (courts should "apply pre-established duties to new situations as they arise in our rapidly-evolving society"); *Mercy Health*, 2025 WL 1827804, at *9 ("Plaintiffs here argue that Bon Secours' purported duty to protect their sensitive data from misuse arises from the employer-employee relationship. That is enough to plausibly allege a common-law duty to protect.") (internal citation omitted); *Clemens*, 48 F.4th at 158 ("In an increasingly digitalized world, an employer's duty to protect its employees' sensitive information has significantly broadened.").

Defendant quibbles with these points by claiming a special relationship does not extend to former employees like Plaintiff Rudd or to customers like the other Plaintiffs. MTD at PageID 232. But it overlooks that the risk of data theft does not dissipate after termination of employment or a customer has left a store—the risk remains until the data is removed. Plaintiffs' information

---

[7] Defendant's reliance on outdated caselaw asserting the minority viewpoints of foreign jurisdictions is misguided. *Compare, e.g.,* MTD at PageID 232 *with Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 594-5 (S.D.N.Y. 2022) (disagreeing with *Hammond*).

remained in Defendant's system at the time of the Data Breach. Under these circumstances, a special relationship exists between Plaintiffs and Defendant (at least as it relates to data security) until Defendant removes their data from its system.

This Court should follow *Beretta* and hold that Defendant had a duty to exercise reasonable care when collecting, storing, and using Plaintiffs' PII so as to avoid creating dangerous conditions that would be foreseeably exploited by criminals. *Beretta*, 2002-Ohio-2480, at ¶ 19. However, the Court should also recognize the existence of the special relationship between Plaintiffs and Defendant, which although unnecessary to state a claim, imposed a specific duty on Defendant to protect them from foreseeable criminal activity related to the data Defendant possessed.

### ii. *Plaintiffs Adequately Allege Breach of Duty*

Plaintiffs plausibly allege that Defendant breached a duty to exercise reasonable care. The duty is "always the same: to conform to the legal standard of reasonable conduct in the light of apparent risk." *Berdyk v Shinde*, 613 N.E.2d 1014, 1020 (Ohio 1993). Whether this duty was breached is generally a question of fact that should be decided by a jury. *Hall v. Watson*, 2002-Ohio-3176, ¶ 33 (Ct. App.); *Gedeon v. E. Ohio Gas Co.*, 190 N.E. 924, 925 (Ohio 1934). The Court should defer consideration of this point to later in the proceedings.

Defendant incorrectly argues that Plaintiffs have failed to allege sufficient facts to establish proximate causation. MTD at PageID 233. Not so. Courts recognize that plaintiffs plausibly allege a breach of duty by pleading that the defendant knew of the foreseeability of cyber threats and failed to "exercise reasonable care" in handling personal information and supervising its agents. *Koeller v. Numrich Gun Parts Corp.*, 675 F. Supp. 3d 260, 270 (N.D.N.Y. 2023); *see also Cahill v. Mem'l Heart Inst., LLC*, 2024 WL 4311648, at *7 (E.D. Tenn. Sept. 26, 2024) ("[T]he Court finds Plaintiffs' claim that data was unencrypted to be sufficiently specific to survive a motion to

dismiss . . . . While the allegation about unencrypted data is stated 'upon information and belief,' the Court draws all reasonable inferences from the entire pleading in favor of Plaintiffs . . . .").

Plaintiffs allegations are even more robust, as they allege several specific data security failures, including "limiting access to sensitive information to only necessary employees, requiring multi-factor authentication to verify access credentials, encrypting data at rest and in transit, monitoring its systems for signs of unusual activity or the transfer of large volumes of data, and regularly rotating passwords" Compl. ¶ 14. Plaintiffs also allege that Defendant represented that it would "employ industry recognized security safeguards [and] modern encryption protocols with industry accepted cipher strengths" as part of its effort to "maintain physical, electronic, and procedural safeguards." *Id*. ¶¶ 89-90. *See also,* Compl. ¶¶ 373-78.

If any doubt remains, those questions are best addressed following discovery as specific facts regarding the security failures that caused the Data Breach are exclusively within Defendant's knowledge. *See, e.g*., *Ramirez*, 69 F.4th at 1220-21 ("We cannot expect a plaintiff … to plead with exacting detail every aspect of [a company's] security history and procedures …") (internal quotation marks and citation omitted); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 909 (N.D. Cal. 2024) ("[W]hen a breach occurs, *the thing speaks for itself.* The breach would not have occurred but for inadequate security measures, or so it can be reasonably inferred at the pleadings stage.") (emphasis in original). At the pleading stage, Plaintiffs allege enough.

### iii. Plaintiffs Adequately Allege Damages Caused by the Data Breach

Plaintiffs plausibly plead cognizable injuries caused by Defendant's negligence for the same reasons they have standing. *Allen*, 696 F. Supp. 3d at 437 ("[I]f a plaintiff meets Article III's injury-in-fact requirement, that plaintiff has almost certainly sustained cognizable damages.") (citing *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018)).

Nevertheless, Defendant incorrectly argues that the economic loss rule precludes Plaintiffs' damages. In *Allen*, this Court rejected that argument and explained that the economic-loss rule does not apply to a loss of privacy, and that "even where a plaintiff does allege purely economic loss, the economic-loss rule serves to bar only those negligence claims 'premised entirely upon the terms of a contract.'" *Allen*, 696 F. Supp. 3d at 439 (quoting *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 10). In this case, Plaintiffs have similarly suffered privacy injuries (Compl. ¶¶ 129, 140, 151, 162, 173, 185, 195, 206, 217, 228, 239, 250, 263, 275), and regardless, Defendant's "duty to better safeguard Plaintiffs' PII arose in tort," not "entirely upon the terms of a contract," so the economic-loss rule does not apply to Plaintiffs' negligence claim. *Allen*, 696 F. Supp. 3d at 439 (quoting *Corporex*, 2005-Ohio-5409, ¶ 10); *accord Mercy Health*, 2025 WL 1827804, at *10 ("In other words, because Plaintiffs rely at least in part on a duty that arises under common law (as opposed to a contract), the economic loss rule does not bar Plaintiffs' negligence claim.").

Defendant relies on cases like *Tucker v. Marietta Area Health Care, Inc.*, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023) and *Corporex*, 2005-Ohio-5409. However, as this Court correctly held in *Allen*, *Corporex* supports Plaintiffs' position that the economic loss rule is inapplicable to this case, and *Tucker's* assertion "that the 'economic loss doctrine does not hinge on how the defendant's duty arose' directly contravenes the Supreme Court of Ohio's leading economic-loss-rule precedent." *Allen*, 696 F. Supp. 3d at 439 n.3 (citing *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 630 (1989)); *see also Corporex*, 2005-Ohio-5409, at ¶ 10. Similar to its decision in *Allen*, the Court should hold that the economic loss rule does not apply to this case.

## B. Breach of Implied Contract

Defendant attacks Plaintiffs' breach of contract claim on the erroneous bases that Plaintiffs

have not demonstrated consideration or a mutual understanding that Defendant would implement
reasonable safeguards to protect Plaintiffs' confidential PII. MTD at PageID 235-36.

First, Plaintiffs satisfy the element of consideration by alleging that they provided personal
information as a pre-condition of receiving services and employment, which was both a benefit to
Defendant and a detriment to Plaintiffs, i.e., they were required to relinquish control over data that
could (and later did) cause them harm. *See Perry v. Bay & Bay Transp. Servs., Inc.*, 650 F. Supp.
3d 743, 757 (D. Minn. 2023) ("Perry provided consideration by providing valuable property, his
PI. By mandating this exchange of information, it is plausible that Bay & Bay made an implied
promise to keep the PI secure."); *accord McLaughlin v. Taylor Univ.*, 2024 WL 4274848, at *8
(N.D. Ind. Sept. 23, 2024) ("Plaintiffs' provision of their PII is sufficient consideration.").
Plaintiffs did not convey their PII gratuitously. *See* Compl. ¶ 91. Plaintiffs' labor or the money
they paid for services are also forms of consideration. *See O'Byrne v. Weyerhaeuser Co.*, 2020 WL
6445832, at *4 (S.D. Ohio Nov. 3, 2020) ("[I]t is a fundamental principle of contract law that one
consideration can support many promises.") (citation omitted).

Second, Defendant's argument about a preexisting duty of care fails because "statutory law
existing at the time a contract is made becomes a part of the contract" under Ohio law *Dayton
Monetary Assoc. v. Becker*, 710 N.E.2d 1151, 1157 (Ohio Ct. App. 1998). Furthermore, Plaintiffs
allege that Defendant failed to comply with specific industry standards, obligations that go beyond
the scope of any pre-existing duty. *Compare* Compl. ¶ 90 *with Davila v. New Enchantment Grp.
LLC*, 2024 WL 6895566, at *5 (D. Ariz. Apr. 25, 2024) ("Defendant implicitly promised to protect
PII/PHI by complying with industry standards that exceeded state and federal regulations.").

Third, regarding mutual assent, "[i]t is difficult to imagine how, in our day and age of data
and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal

information would not imply the recipient's assent to protect the information sufficiently." *Mercy Health*, 2025 WL 1827804, at *11 (citation omitted). "In line with that observation, numerous courts have found an implied contract exists where a plaintiff alleges that she was required to turn over PII to obtain employment or a type of service." *Id.* at *11 (collecting cases).

Plaintiffs further bolster this analysis by referencing Defendant's privacy policies to show, not that they relied on those statements, but that Defendant understood its own obligation to implement data security safeguards. *See* Compl. ¶¶ 86-91; *Mercy Health*, 2025 WL 1827804, at *11 ("That implied agreement is even more plausible given Plaintiffs' allegations that Bon Secours was aware of its data protection and compliance duties, as evidenced by its website and Code of Conduct."). Nevertheless, Plaintiffs state a valid claim even without reference to the privacy policy. *See Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 780 (S.D. Ohio 2024) (holding in a data breach case that "[t]he Court need not resolve this dispute over the privacy policy because Plaintiffs have stated a claim without it.").[8]

Ultimately, fact questions about whether a contract exists, what the parties' obligations under the contract are, and whether the security measures implemented by Defendant complied with its obligations, should not be decided until after discovery. *See id.* (it was "premature to determine at this stage that any implied contract did not include the duties Plaintiffs allege.").

## C. Unjust Enrichment

Plaintiffs have sufficiently plead their unjust enrichment claims. A claim for unjust enrichment arises where a party alleges (1) a benefit conferred by a plaintiff upon a defendant; (2)

---

[8] To the extent Defendant claims that its promise to safeguard PII was not absolute, Plaintiffs have alleged a failure to implement *reasonable* data security measures, not a failure to protect against every conceivable cyberattack. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *45 (N.D. Cal. Aug. 30, 2017) ("Defendants' disclaimer that security mechanisms have 'inherent limitations' itself implies that there are at least some reasonable security mechanisms in place.").

knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, ¶ 20. Defendant challenges the first and third element.

Defendant incorrectly argues Plaintiffs have not alleged facts that it derived a substantial economic benefit from the possession and use of Plaintiffs' PII. MTD at PageID 236-38. Not so. Compl. ¶¶ 86, 347, 458-63. Most notably, Plaintiffs allege: "Defendant would not be able to carry out an essential function of its regular business without the Private Information of Plaintiffs and … derived revenue by using it for business purposes." *Id.* ¶ 463. The receipt and possession of Plaintiffs' PII is central to Defendant's business and is inextricable from its revenue and profit. *See Tjahjono v. Westinghouse Air Brake Techs. Corp.*, 2024 WL 1287085, at *8 (W.D. Pa. Mar. 26, 2024) (defendant may have been unjustly enriched by accepting their employees' labor and failing to protect their PII); *Gordon v. Zeroed-In Tech., LLC*, 2025 WL 936415, at *16 (D. Md. Mar. 26, 2025) ("Defendant allegedly accepted the benefits accompanying Plaintiffs' data without implementing adequate safeguards to protect Plaintiffs' PII. Defendant thus retained Plaintiffs' data, and the accompanying benefit, at Plaintiffs' expense."). These cases demonstrate that Plaintiffs are not required to allege that Defendant stole their PII or used it for marketing purposes.

Defendant was also enriched by Plaintiffs' labor or the money they paid for services. Compl. ¶ 463. Defendant should have used a sufficient portion of the revenue it derived from Plaintiffs to pay for adequate data security. *Id.*; *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 641 (S.D. Ohio 2020) ("Plaintiff alleges that Defendant failed to safeguard this information but has retained the payment made by Plaintiff for those services. Accordingly, Plaintiff has stated a claim for unjust enrichment."); *Tucker*, 2023 WL 423504, at *7 (similar); *see also Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 769 (N.D. Iowa 2024) (plaintiff alleged he conferred

benefits on defendant "in the form of payments for financial services, as well as providing their PII to [defendant] that was used to facilitate payment and the provision of services").[9]

A benefit may be conferred without the direct sale of goods or services to third parties. *See, e.g.*, *Lurry v. Pharmerica Corp.*, 2025 WL 2965642, at *7 (W.D. Ky., June 12, 2024) (finding an employee's labor in connection with employment is a benefit in the context of a data breach case); *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *21 (D. Mass. July 31, 2025) (plaintiffs plausibly alleged a conferred benefit because defendant's business depended on receipt of such information). Therefore, even where plaintiffs did not directly pay for services, courts recognize a conferred benefit where a defendant requires sensitive information and derives a benefit from receiving that data. Here, Plaintiffs allege Defendant received a benefit because it would not have been able to conduct its business without this information. Compl. ¶ 463.

Defendant's insistence that Plaintiffs "got what they paid for" fails to take into consideration the promises made in its Privacy Policy. MTD at PageID 238. Specifically, Defendant claims that "[w]e employ industry recognized security safeguards to help protect the personally identifiable information that you have provided to us from loss, misuse, or unauthorized alteration. To protect you we have deployed modern encryption protocols with industry accepted cipher strengths." MTD at PageID 226. Plaintiffs allege they provided their PII to Defendant reasonably expecting and with the mutual understanding that it would comply with these promises. Compl. ¶ 91. *See, e.g., Foster*, 493 F. Supp. 3d at 641 (declining to dismiss unjust enrichment claim where plaintiffs believed defendant would devote a greater portion of its revenue to safeguarding the data it collected); *Tucker*, 2023 WL 423504, at *7 (similar). Based on the foregoing, Plaintiffs have sufficiently pleaded a claim for unjust enrichment.

---

[9] Cases holding otherwise are not persuasive because they unreasonably limit the application of unjust enrichment, allowing an inequitable outcome if a victim is unable to recover through tort or contract.

### D.  California Consumer Privacy Act ("CCPA")

Defendant also challenges Plaintiffs' CCPA claim, arguing it cured the breach; Plaintiffs failed to comply with the statutory notice provision; and Plaintiffs do not allege the specific data security failings leading to the Data Breach. MTD at PageID 239-40. First, "[t]he implementation and maintenance of reasonable security procedures and practices pursuant to Section 1798.81.5 following a breach does not constitute a cure with respect to that breach." *In re Eureka Casino Breach Litig.*, 2024 WL 4253198, at *12-14 (D. Nev. Sept. 19, 2024) (quoting Cal. Civ. Code § 1798.150(b)). As the *Eureka* court further noted, the "measures were designed for the purpose of addressing future threats, not curing the unauthorized release of the plaintiffs' data." *Id.*

Defendant's argument that Plaintiffs fail to allege inadequate data security with sufficient specificity similarly fails. They allege specific actions Defendant could have but failed to implement to protect against the Data Breach, i.e., limiting access to sensitive information, encrypting or deleting data, rotating passwords, and employing multifactor authentication access data. Compl. ¶¶ 14, 128, 139, 150, 161, 172, 184, 194, 205, 216, 227, 238, 249, 262, 274, 418, 487. Plaintiffs also allege Defendant failed to comply with industry standards and regulation including the GLBA. *Id.* ¶¶ 356-78. These allegations go well beyond those that courts have found sufficient to state a claim under the CCPA. *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024) ("Plaintiffs further allege that Defendants did not take specific actions such as encrypting their PII, deleting data that was no longer needed, as well as failing to follow FTC Guidelines, and industry standards.") (internal citations omitted); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (CCPA claim sufficiently stated where plaintiff alleged a "purported lack of reasonable security measures that allowed third parties to view and steal her personal information").

28

Finally, Plaintiffs complied with the pre-suit notice provision and sufficiently placed defendant on notice of the fact that it violated the CCPA by failing to implement reasonable safeguards. While Defendant complains that Plaintiffs did not address its failing with more specificity, "[n]othing in the law suggests this notice is required to meet the same standards for pleading as a complaint." *In re Eureka*, 2024 WL 4253198, at *13. As to the timing of the notice letters, Plaintiffs mailed them before filing their consolidated complaint and to the extent that the complaint references statutory damages, that reference is immaterial as Defendant responded and was unable to offer evidence that it cured the breach rather than implemented data security standards following the breach and exfiltration of Plaintiffs' data.

### E.  Declaratory Judgment and Injunctive Relief

Defendant seeks dismissal of Plaintiffs' claim for declaratory and injunctive relief pursuant to 28 U.S.C. § 2201, *et. seq.*, incorrectly claiming it cannot be a standalone claim and that even if it was, it is duplicative. MTD at PageID 241. However, when one substantive claim survives a motion to dismiss, a declaratory judgment claim also survives. *Skurka Aero., Inc. v. Eaton Aero., L.L.C.*, 2011 WL 1135946, at *7 (N.D. Ohio 2011) (Oliver, J); *see also Stinson v. Yum! Brands, Inc.*, 2025 WL 2755879, at *23 (W.D. Ky. July 17, 2023) (holding that "the Court need not dismiss duplicative declaratory-judgment claims at the motion-to-dismiss stage").  Furthermore, Plaintiffs' request for declaratory relief is forward looking and intended to prevent future harm rather than compensate for past injuries. *See, e.g., Crowe v. Managed Care of N. Am. Inc.*, 2025 WL 2829532, at *5 (S.D. Fla. Jan. 21, 2025) (allegations of a live controversy and threat of future injury sustained a claim for declaratory judgment). Therefore, Plaintiffs' requests for declaratory and injunctive relief are properly before the Court.

### F.  North Carolina Unfair and Deceptive Trade Practice Act ("NCUDTPA")

Under the NCUDTPA, "unfair or deceptive acts or practices in or affecting commerce[]

are declared unlawful." N.C. Gen. Stat. Ann. § 75-1.1(a). This language "closely resembles that employed by Section 5(a)(1) of the Federal Trade Commission Act," which "was not accidental." *Johnson v. Phoenix Mut. Life Ins. Co.*, 266 S.E.2d 610, 620 (N.C. 1980) (quoting 15 U.S.C. § 45(a)(1)). "While an act or practice which is unfair may also be deceptive, or vice versa, it need not be so for there to be a violation of the Act." *Id.* Furthermore, unfair conduct does not need to be alleged with particularity. *Capiau*, 2024 WL 3747191, at *13 ("Rule 9(b) does not apply to NCUDTPA claims that do not sound in fraud."). Plaintiffs plausibly allege that Defendants engaged in unfair conduct under the FTC Act. *See, e.g.,* Compl. ¶¶ 122-26, 354, 356-61, 496-97; *see also In re Brinker Data Incident Litig.*, 2020 WL 691848, at *12 (M.D. Fla. Jan. 27, 2020) ("[S]everal courts have determined that the failure to maintain reasonable and appropriate data security for sensitive personal information violates the FTC Act.") (collecting cases). Defendant's same conduct was unfair under the NCUDTPA. *See Johnson*, 266 S.E.2d at 620; *Capiau*, 2024 WL 3747191, at *13 ("To the extent that Plaintiff's NCUDTPA claim pertains to Defendant's allegedly unfair business practices—i.e., Defendant's failure to implement and maintain adequate cybersecurity measures and to warn Plaintiff of the breach—Defendant's motion will be denied.").

## VI.     CONCLUSION

Plaintiffs respectfully request the Court deny the motion to dismiss.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates (0085579)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*

*Interim Class Counsel for*
*Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2026, I served the foregoing upon counsel of record for all parties by filing it with the court's electronic-filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Terence R. Coates*
Terence R. Coates (0085579)

31