## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| *In re Union Home Mortgage Corp. Data Breach Litigation* | ) CASE NO. 1:25-CV-1874 |
| | ) |
| | ) JUDGE OLIVER |
| | ) |
| | ) **REPLY IN SUPPORT OF DEFENDANT** |
| | ) **UNION HOME MORTGAGE CORP.'S** |
| | ) **MOTION TO DISMISS** |
| | ) |
| | ) |

# <u>TABLE OF CONTENTS</u>

**Page**

I.     The Court Must Consider UHM's Factual Standing Challenge ........................................ 1

II.     Plaintiffs Cannot Survive UHM's Facial Standing Challenge............................................ 4

      A.     Plaintiffs Do Not Adequately Allege Their Data Was Affected............................ 4

      B.     Plaintiffs Do Not Adequately Allege "Privacy Injuries" ........................................ 5

      C.     Plaintiffs Do Not Adequately Allege a Substantial Risk of Future Harm.............. 6

      D.     Plaintiffs Do Not Have Independent Standing to Pursue Contract and Quasi-Contract Claims .................................................................................................... 7

      E.     Plaintiffs Do Not Adequately Allege a Misuse of Their Private Information......... 8

      F.     Plaintiffs Do Not Adequately Allege Traceability .................................................. 8

      G.     Plaintiffs Do Not Have Standing to Seek Injunctive Relief .................................. 9

III.     Plaintiffs Fail To State a Claim Upon Which Relief May Be Granted ............................ 10

      A.     Plaintiffs Fail to State a Claim for Negligence .....................................................11

      B.     Plaintiffs Have Not Stated a Claim for Breach of Implied Contract .................... 14

      C.     Plaintiffs Fail to State a Claim for Unjust Enrichment ......................................... 16

      D.     Plaintiffs Have Not Stated a Claim Under the California Consumer Privacy Act (CCPA), and in Any Event Are Barred from Seeking Statutory Damages ........... 17

      E.     Plaintiffs are Not Entitled to Declaratory or Injunctive Relief ............................ 19

      F.     Plaintiffs Fail to State a Claim under the NCUDTPA .......................................... 19

IV.     Conclusion ....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Columbus State Cmty. Coll.*,
  2015-Ohio-2170 (10th Dist.) ...........................................................................15, 16

*Allen v. Wenco Mgmt., LLC*,
  696 F. Supp. 3d 432 (N.D. Ohio 2023).............................................................4, 13

*Allied Distribs., Inc. v. Latrobe Brewing Co.*,
  847 F. Supp. 376 (E.D.N.C.1993)............................................................................20

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
  No. CV 19-MD-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ........................14

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006).................................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................................9, 12

*Astra USA, Inc. v. Santa Clara Cnty., Cal.*,
  563 U.S. 110 (2011)...............................................................................................15

*In re Bank of Am. California Unemployment Benefits Litig.*,
  674 F. Supp. 3d 884 (S.D. Cal. 2023)...............................................................12, 17

*Bartolomeo v. S.B. Thomas, Inc.*,
  889 F.2d 530 (4th Cir. 1989) ..................................................................................20

*Blood v. Labette Cnty. Med. Ctr.*,
  No. 5:22-CV-04036-HLT-KGG, 2022 WL 11745549 (D. Kan. Oct. 20, 2022).....................6

*In re Bon Secours Mercy Health Data Breach Litig.*,
  No. 1:24-CV-594, 2025 WL 1827804 (S.D. Ohio July 2, 2025)............................10

*Bracy v. Americold Logistics LLC*,
  No. 1:23-CV-5743-TWT, 2025 WL 552676 (N.D. Ga. Feb. 19, 2025) .................16

*Brooks v. Peoples Bank*,
  732 F. Supp. 3d 765 (S.D. Ohio 2024) ........................................................7, 16, 17

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
  238 F. Supp. 3d 1359 (S.D. Fla. 2017) ...................................................................14

*Burnham v. Cleveland Clinic*,
    2016-Ohio-8000 .................................................................................................. 11

*Business Cabling, Inc. v. Yokeley*,
    182 N.C. App. 657 (2007) ................................................................................... 19

*Capiau v. Ascendum Machinery, Inc.*,
    2024 WL 3747191 (W.D.N.C. Aug. 9, 2024) ....................................................... 20

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ................................................................................ 2

*In re CBIZ Data Breach Litig.*,
    No. 1:24 CV 1722, 2025 WL 1557033 (N.D. Ohio June 2, 2025) ............... 9, 16, 17

*Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*,
    42 Ohio St. 3d 40, 537 N.E.2d 624 (1989) ........................................................... 13

*Chen v. JPMorgan Chase Bank, N.A.*,
    745 F. Supp. 3d 1025 (C.D. Cal. 2024) ................................................................ 17

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................... 6, 9, 10

*Clippinger v. State Farm Auto Insurance Co.*,
    No. 24-5421, 2026 WL 234844 (6th Cir. Jan. 29, 2026) ........................................ 8

*Cook v. GameStop, Inc.*,
    148 F.4th 153 (3d Cir. 2025) ............................................................................ 5, 6

*Corporex Dev. & Constr. Mgt, Inc. v. Shook, Inc.*,
    2005-Ohio-5409 .................................................................................................. 13

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975) ............................................................................................. 5

*Coyne v. Am. Tobacco Co.*,
    183 F.3d 488 (6th Cir. 1999) ................................................................................ 1

*Dalton v. Camp*,
    548 S.E. 704 (N.C. 2001) ............................................................................... 19, 20

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ............................................................................... 12

*Davis v. Anderson*,
    No. 3:20-CV-00250-JGC, 2021 WL 5743745 (N.D. Ohio Dec. 2, 2021) ............... 12

*Dayton Monetary Assoc. v. Becker*,
   710 N.E.2d 1151 (Ohio Ct. App. 1998).................................................................................15

*De Angelis v. Nat'l Ent. Grp., LLC*,
   No. 2:17-CV-924, 2018 WL 11316612 (S.D. Ohio July 25, 2018)............................................3

*Doe v. Mission Essential Group, LLC*,
   No. 2:23-CV-3365, 2024 WL 3877530 (S.D. Ohio Aug. 20, 2024) *appeal*
   *dismissed*, No. 24-3815, 2024 WL 5165129 (6th Cir. Dec. 2, 2024) ......................................4

*Dougherty v. Bojangles' Restaurants, Inc.*,
   No. 3:25-CV-00065-KDB-DCK, 2025 WL 2810673 (W.D.N.C. Sept. 30,
   2025) ............................................................................................................................................6

*Durgan v. U-Haul Int'l Inc.*,
   No. CV-22-01565-PHXMTL, 2023 WL 7114622 (D. Ariz. Oct. 27, 2023) ..........................14

*Edwards v. Terminix*,
   No. 1:25 CV 205, 2025 WL 1116247 (N.D. Ohio Apr. 15, 2025) ............................................1

*Electra v. Dreamers Cabaret, LLC*,
   No. 5:18-CV-2706, 2019 WL 3238504 (N.D. Ohio July 18, 2019) ........................................13

*In re Eureka Casino Breach Litigation*,
   No. 2:23-CV-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024)....................18

*Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n*,
   54 Ohio St. 3d 1, 560 N.E.2d 206 (1990) ..............................................................................13

*Foster v. Health Recovery Servs., Inc.*,
   493 F. Supp. 3d 622 (S.D. Ohio 2020) ..................................................................................11

*Galaria v. Nationwide Mutual Insurance Company*,
   663 Fed.Appx. 384 (2016)..................................................................................................5, 7

*Gales v. Ohio Lottery Comm.*,
   2025-Ohio-5189 (Ct. of Cl.) ......................................................................................14, 15, 16

*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
   491 F.3d 320 (6th Cir. 2007) .............................................................................................2, 3

*Greenstein v. Noblr Reciprocal Exch.*,
   No. 22-17023, 2024 WL 3886977 (9th Cir. Aug. 21, 2024) ....................................................4

*Griffey v. Magellan Health Inc.*,
   No. CV-20-01282-PHX-MTL, 2022 WL 1811165 (D. Ariz. June 1, 2022) ..........................17

*Herschfus v. City of Oak Park, Michigan,*
150 F.4th 489 (6th Cir. 2025) ............................................................10

*Hunstein v. Preferred Collection and Management Services, Inc.,*
48 F.4th 1236 (11th Cir. 2022) ............................................................6

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.,*
792 F.3d 627 (6th Cir. 2015) ...............................................................1

*Jenkins v. Associated Wholesale Grocers, Inc.,*
No. 24-4039-DDC-GEB, 2025 WL 708574 (D. Kan. Mar. 5, 2025) ....................19

*Johnson v. Phoenix Mut. Life Ins. Co.,*
266 S.E.2d 610 (N.C. 1980).................................................................20

*Jones v. Carrols, LLC,*
2015-Ohio-2250 (9th Dist.) ...............................................................16

*Kingen v. Warner Norcross + Judd LLP*, No. 1:22-CV-01126, 2023 WL
11965363 (W.D. Mich. Oct. 5, 2023) .....................................................7

*Lochridge v. Quality Temp. Servs., Inc.,*
No. 22-CV-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) ....................10

*Marlin v. Associated Materials, LLC,*
No. 5:23CV1621, 2024 WL 2319115 (N.D. Ohio May 22, 2024)........................7

*Matos v. Lexington Place Condo. Ass'n, Inc.,*
No. 22-11875, 2024 WL 3617254 (11th Cir. Aug. 1, 2024) ..........................1

*McCombs v. Delta Grp. Elecs., Inc.,*
676 F. Supp. 3d 1064 (D.N.M. 2023) ......................................................6

*McNutt v. General Motors Acceptance Corp.,*
298 U.S. 178 (1936).........................................................................1

*Moore v. Lafayette Life Ins. Co.,*
458 F.3d 416 (6th Cir. 2006) ...............................................................2

*In re MOVEit Customer Data Sec. Breach Litig.,*
No. 23-MD-3083-ADB-PGL, 2025 WL 2179475 (D. Mass. July 31, 2025) .........18

*Myslivecek v. FCA US LLC,*
No. 21-10346, 2022 WL 17904526 (E.D. Mich. Dec. 23, 2022) ......................3

*Nabozny v. OptioSols. LLC,*
84 F.4th 731 (7th Cir. 2023) ...........................................................5, 6

*Parsons v. U.S. Department of Justice*,
 801 F.3d 701 (6th Cir. 2015) ................................................................9

*Pisciotta v. Old Nat. Bancorp*,
 499 F.3d 629 (7th Cir. 2007) ..............................................................11

*Polkowski v. Jack Doheny Companies, Inc.*,
 No. 2:25-CV-10516, 2025 WL 3079358 (E.D. Mich. Nov. 4, 2025)...................................3, 8

*Ramirez v. Paradies Shops*,
 69 F.4th 1213 (11th Cir. 2023) ...............................................................5

*Ramirez v. Paradies Shops, LLC*,
 69 F. 4th 1213 (11th Cir. 2023) ...............................................................9

*Razuki v. Caliber Home Loans, Inc.*,
 No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ......................17

*Remijas v. Neiman Marcus Group, LLC*,
 794 F.3d 688 (7th Cir. 2015).................................................................5

*Rodriguez v. CRG Lynwood LLC*,
 No. 24-11576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025).....................................4, 5, 10

*Rulli v. Fan Co.*,
 79 Ohio St.3d 374 (1997).....................................................................16

*Savel v. MetroHealth Sys.*,
 96 F.4th 932 (6th Cir. 2024) ...................................................................1

*Savidge v. Pharm-Save, Inc.*,
 727 F. Supp. 3d 661 (W.D. Ky. 2024), *amended*, No. 3:17-CV-186-CHB,
 2025 WL 964446 (W.D. Ky. Mar. 31, 2025) .................................................10

*Shepherd v. Cancer & Hematology Centers of W. Michigan, P.C.*,
 No. 1:22-CV-734, 2023 WL 4056342 (W.D. Mich. Feb. 28, 2023) ........................................3

*Shields v. Professional Bureau of Collections*,
 55 F.4th 823 (10th Cir. 829) ...................................................................6

*Steel Co. v. Citizens for a Better Environment*,
 523 U.S. 83 (1998)...........................................................................2, 3

*Strautins v. Trustwave Holdings, Inc.*,
 27 F. Supp. 3d 871 (N.D. Ill. 2014) ............................................................4

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*,
 778 F.3d 502 (5th Cir. 2015) ...................................................................3

vi

*Tate v. EyeMed Vision Care, LLC*,
    No. 1:21-CV-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ............................7, 8, 14, 16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..............................................................................................................7, 9

*Tucker v. Marietta Area Health Care, Inc.*,
    No. 2:22-CV-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023)...........................................15

*United States v. Ritchie*,
    15 F.3d 592 (6th Cir. 1994) ...................................................................................................3

*Vasu v. Combi Packaging Sys. LLC*,
    No. 5:18-CV-1889, 2020 WL 2733756 (N.D. Ohio May 25, 2020) ....................................19

*In re Waste Mgmt. Data Breach Litig.*,
    No. 21CV6147 (DLC), 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022)....................................18

*WCI, Inc. v. Ohio Dep't of Pub. Safety*,
    475 F. Supp. 3d 770 (S.D. Ohio 2020), *aff'd*, 18 F.4th 509 (6th Cir. 2021)...........................19

*Whitaker v. M.T. Auto., Inc.*,
    2006-Ohio-5481 .................................................................................................................13

*Willingham v. Glob. Payments, Inc.*,
    No. 1:12-CV-01157-RWS, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ................................14

*Worix v. MedAssets, Inc.*,
    869 F. Supp. 2d 893 (N.D. Ill. 2012) ..................................................................................11

*In re Zappos.com, Inc., Customer Data Sec. Breach*,
    893 F. Supp. 2d 1058 (D. Nev. 2012) .................................................................................16

**Statutes**

15 U.S.C. § 6801 ................................................................................................................14

15 U.S.C. § 6803 ................................................................................................................14

Cal. Civ. Code § 1798.150(b) ............................................................................................18

California Consumer Privacy Act .......................................................................................17

CCPA ............................................................................................................................17, 18

FTC Act .............................................................................................................................19

Gramm-Leach-Bliley Act ...................................................................................................14

Magnuson-Moss Act ............................................................................................... 2

Ohio Consumer Sales Practice Act ......................................................................13

Ohio Rev. Code §1354.01 .....................................................................................11

Ohio Rev. Code § 1354.02(D)(1) .........................................................................11

Sherman Act ............................................................................................................. 2

**Other Authorities**

16 C.F.R. § 314.4 ...................................................................................................15

Federal Rule of Civil Procedure Rule 8 ...............................................................12

Rule 1301:8-7-02(C)(2) .........................................................................................14

The Plaintiffs' Opposition misconstrues UHM's Motion to Dismiss in an effort to distract from its deficient pleadings. UHM is not "smuggling" facts into the record, but making a procedurally proper factual standing challenge, which Plaintiffs plainly cannot rebut. Nor is UHM even remotely suggesting that companies need not bother protecting personal data. UHM has simply shown that these Plaintiffs suffered no cognizable injury that is traceable to the ransomware attack on UHM. Plaintiffs' Amended Complaint should be dismissed in its entirety.

## I.     The Court Must Consider UHM's Factual Standing Challenge

Rather than substantively address UHM's factual standing challenge, Plaintiffs urge the Court to disregard it entirely because it "overlap[s]" with the merits of the case. Opp. at 14. This argument flies in the face of the Supreme Court's and Sixth Circuit's repeated admonitions that a district court *must* determine whether a plaintiff has Article III standing at the outset of a case, and throughout the pendency of the matter. *See, e.g., McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999).

Courts are obliged to address whether a plaintiff has standing because this issue goes to the core of whether a court even has the constitutional authority to preside over a case: if a plaintiff lacks standing at any point, there is no "case or controversy" within the meaning of Article III, and the court must dismiss the case. *See Savel v. MetroHealth Sys.*, 96 F.4th 932, 939 (6th Cir. 2024) (internal citations omitted); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 631 (6th Cir. 2015). This is precisely why the factual challenge to standing must be addressed now, *before* the case proceeds any further. *See, e.g., Edwards v. Terminix*, No. 1:25 CV 205, 2025 WL 1116247, at *3 (N.D. Ohio Apr. 15, 2025); *Matos v. Lexington Place Condo. Ass'n, Inc.*, No. 22-11875, 2024 WL 3617254, at *4 (11th Cir. Aug. 1, 2024).

Plaintiffs contend that a district court may *not* consider a factual challenge to standing if the challenge "implicates" or "overlaps with" the merits of the plaintiffs' claim but must simply

"find that jurisdiction exists" and deal with the challenge later when the court comes to the merits. Opp. 15. But the cases Plaintiffs rely on—*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320 (6th Cir. 2007), and *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430 (6th Cir. 2012)—did not involve Article III standing. *Gentek* involved whether an item was a "consumer product" within the meaning of the Magnuson-Moss Act. *Carrier* involved whether a European price-fixing conspiracy was directed at the U.S. market and so fell within the scope of the Sherman Act. In both cases, the court held that the applicability of the statute and the merits of the plaintiff's claim turned on the same question. It is only in such cases that courts may simply resolve the statutory issue on the merits. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 444 (6th Cir. 2006).

Indeed, the Supreme Court and the Sixth Circuit have clarified that the "jurisdictional" issues raised in cases like *Gentek* and *Carrier Corp.* are not actually issues of "subject matter jurisdiction" at all, since they don't implicate the court's *authority* to hear a case; rather, they involve elements of the plaintiff's statutory claim. *See, e.g., Arbaugh v. Y & H Corp.,* 546 U.S. 500, 510-516 (2006); *Carrier.*, 673 F.3d at 439 n.4.[1]

Article III standing, however, is different. That is why the Supreme Court has expressly *rejected* the notion that a court can assume the plaintiff has standing until the court decides the merits— what the Court critically referred to as "the 'doctrine of hypothetical jurisdiction.'" *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (citation omitted). The court held:

> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers. …"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."

---

[1] Most of the other cases cited by Plaintiffs did not involve factual challenges to standing. Also, UHM has not merely identified potential alternative causes of Plaintiffs' alleged harm. It has provided *proof* that no data from the UHM breach has been made publicly available, and that Plaintiffs' data is already publicly available from *other* breaches.

*Id.* (quoting *Ex parte McCardle,* 7 Wall. 506, 514 (1869)). Thus, "Article III jurisdiction is always an antecedent question," which must be resolved at the outset of a case. *Id.* at 101.[2]

Accordingly, courts in this Circuit have repeatedly dismissed complaints for lack of standing based on defendants' factual challenges, holding that the *Gentek* "intertwinement rule" is not applicable. *See, e.g., Polkowski v. Jack Doheny Companies, Inc.*, No. 2:25-CV-10516, 2025 WL 3079358, at *6 (E.D. Mich. Nov. 4, 2025); *Shepherd v. Cancer & Hematology Centers of W. Michigan, P.C.*, No. 1:22-CV-734, 2023 WL 4056342, at *3-*7 (W.D. Mich. Feb. 28, 2023); *Myslivecek v. FCA US LLC*, No. 21-10346, 2022 WL 17904526, at *6-*7 (E.D. Mich. Dec. 23, 2022); *De Angelis v. Nat'l Ent. Grp., LLC*, No. 2:17-CV-924, 2018 WL 11316612, at *4-5 (S.D. Ohio July 25, 2018).

Because UHM has properly made a factual challenge to Plaintiffs' standing, Plaintiffs "cannot merely rely on the allegations in the complaint but must offer competing affirmative evidence that proves the court has jurisdiction." *Polkowski* 2025 WL 3079358, at *7. *See also United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Shepherd*, 2023 WL 4056342 at *2; *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

Plaintiffs have offered *no* affirmative evidence that they have standing to sue. Nor do they attack the substance or credibility of the evidence UHM has presented. Thus, the Court is left with only UHM's evidence to consider, and that evidence plainly shows that Plaintiffs have not suffered a concrete injury-in-fact traceable to the breach. Plaintiffs thus have failed to carry their burden of proving that they have standing and the Complaint should be dismissed in its entirety.[3]

---

[2] Plaintiffs' suggestion (Opp. 14) that payment of a ransom would not affect their "privacy injuries" or the lost benefit of the bargain is incorrect. UHM's unrebutted evidence shows that the UHM data has not been publicly disclosed and that Plaintiffs' personal data has *already* been publicly disclosed as a result of *other* breaches. Furthermore, Plaintiffs offer no evidence that data security ever formed part of the contractual bargain with UHM. *See infra* at 7.

[3] Plaintiffs complain that they have not had an opportunity to conduct discovery or prepare an expert report. Opp. 16. However, this is entirely Plaintiffs' own doing. Plaintiffs had 30 days to gather evidence, the same amount of time UHM had. Yet, Plaintiffs did not even attempt to do so, or even request an extension of time.

## II.    Plaintiffs Cannot Survive UHM's Facial Standing Challenge

Even if the Court were to decide that it is premature to rule on UHM's factual challenge, the Complaint does not survive a *facial* challenge because it fails to adequately allege an injury-in-fact traceable to UHM's actions.

### A.    Plaintiffs Do Not Adequately Allege Their Data Was Affected

Plaintiffs point to UHM's Data Breach Notice as proof that their PII was stolen in the data breach. Opp. 5-6. But then they ask the Court to disregard the substance of that letter, which makes clear that the recipient's data "*may*" have been affected and was only "*potentially*" accessed, and states that there was "*no evidence of the misuse, or attempted misuse, of any potentially impacted information.*" Compl., Ex. A (emphases added). Courts have dismissed claims for lack of standing where the notice, like the one here, states only that the recipient's PII *may* have been affected. *See, e.g., Greenstein v. Noblr Reciprocal Exch.*, No. 22-17023, 2024 WL 3886977, at *1 (9th Cir. Aug. 21, 2024); *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880-881 (N.D. Ill. 2014).[4]

The cases Plaintiffs rely on are easily distinguishable. *Allen v. Wenco Mgmt., LLC*, 696 F. Supp. 3d 432 (N.D. Ohio 2023), did not involve standing but whether the plaintiff had stated a negligence claim. Also, the breach notice in *Allen* stated that the impacted files contained Allen's name, Social Security number, and plan information. *Id.* at 434; Case No. 1:23cv103, ECF 5, Ex. 1. Allen therefore was able to credibly allege that *his* data *had* been impacted by the breach.

In *Rodriguez v. CRG Lynwood LLC*, No. 24-11576, 2025 WL 2700614 (E.D. Mich. Sept. 22, 2025), the court acknowledged that the notice's statement that the plaintiff's data was

---

[4] Plaintiffs try to dismiss *Strautins* by noting that the plaintiff "did not receive a data breach *letter*." Opp. 6 (emphasis added). But the breached agency issued a *public* notice stating that certain tax filers' PII may have been compromised. The court's point was that this notice, just like UHM's, stated only that those tax filers' PII *"may* have been affected, or had been *potentially* compromised." 27 F. Supp. 3d at 880 (emphases in original). And the point of *Doe v. Mission Essential Group, LLC* is that a court should disregard allegations in a complaint that are inconsistent with a document attached for support. 2024 WL 3877530, at *5 (S.D. Ohio Aug. 20, 2024). So, here, the Court should disregard the Plaintiffs' unsupported allegations that their data was misused when the notice says expressly that it was not.

4

*potentially* accessed "complicates the analysis," but it was ultimately persuaded to give the plaintiff the "benefit of the doubt" only because another part of the notice was "less equivocal," stating that the data incident "involv[ed]" the plaintiff's data. *Id.* at *3. There is no such language in the UHM notice, which consistently states only that the incident "may have affected" Plaintiffs data.

In *Ramirez v. Paradies Shops*, *LLC*, the defendant did not challenge the plaintiff's standing, and the notice said that the plaintiff's name and Social Security number were contained in files uploaded to third party servers. 69 F.4th 1213, 1216 (11th Cir. 2023). Finally, in *Galaria v. Nationwide Mutual Insurance Company*, 663 Fed.Appx. 384 (2016) and *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), the defendants did not dispute that the plaintiffs' data was impacted.

**B.      Plaintiffs Do Not Adequately Allege "Privacy Injuries"**

Plaintiffs argue that their generally alleged privacy injury is akin to the harm caused by the common law tort of "public disclosure of private facts" and "intrusion upon seclusion." But the tort of public disclosure of private facts addresses "'the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny.'" *Cook v. GameStop, Inc.*, 148 F.4th 153, 159 (3d Cir. 2025) (quoting *Barclift v. Keystone Credit Servs.*, LLC, 93 F.4th 136, 144 (3d Cir. 2024)); *see also Nabozny v. OptioSols. LLC*, 84 F.4th 731, 736 (7th Cir.  2023) (same). "'If there are no grounds to believe that the information will result in humiliation, then there is no comparable harm....'" *Cook*, 148 F.4th at 159 (quoting *Barclift*, 93 F.4th at 147). Furthermore, "even assuming the information was the type that could cause [a plaintiff] humiliation under 'public scrutiny,'" the information must be disclosed to the *public* in order to be "analogous to the harm associated with the tort of disclosure of private information." *Id.*; *see also Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 489 (1975) ("the gravamen of the claimed injury is the publication of information,…the dissemination of which is embarrassing or otherwise

5

painful to an individual"); *Nabozny*, 84 F. 4th at 735 ("'Publicity' ... means that the matter is made public, by communicating it to the public at large…") (quoting Restatement (Second) of Torts § 652D cmt. A)); *Shields v. Professional Bureau of Collections*, 55 F.4th 823, 829 (10th Cir. 829) (same); *Hunstein v. Preferred Collection and Management Services, Inc.*, 48 F.4th 1236, 1245 (11th Cir. 2022) (en banc) (same).

The Complaint alleges no harm of this sort at all. While loan numbers, Social Security numbers, and driver's license numbers may be private information, nothing about them would cause humiliation to Plaintiffs if disclosed. In addition, while Plaintiffs conclusorily assert that their information was posted on the dark web, there are no actual factual allegations to support this, and the notice says otherwise.

Similarly, the tort of intrusion-upon-seclusion addresses the harm caused by an intentional, "highly offensive" intrusion "upon the solitude or seclusion of another or his private concerns or affairs." *Cook*, F.4th at 160. Plaintiffs offer no argument as to how they have suffered this type of harm. And while the Complaint alleges that some plaintiffs received unwanted calls and texts (Compl. ¶¶ 132, 143, 154), the UHM notice does not list phone numbers as one of the types of information potentially breached. Compl. Ex. A. Plaintiffs' allegations therefore do not cross the line from merely possible to plausible. *See McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023); *Blood v. Labette Cnty. Med. Ctr.*, No. 5:22-CV-04036-HLT-KGG, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022); *Dougherty v. Bojangles' Restaurants, Inc.*, No. 3:25-CV-00065-KDB-DCK, 2025 WL 2810673, at *5 (W.D.N.C. Sept. 30, 2025).

**C.    Plaintiffs Do Not Adequately Allege a Substantial Risk of Future Harm**

Plaintiffs offer nothing but conclusory allegations that their data is in the hands of cybercriminals and that it has already been misused. But such allegations cannot support their contention that future harm is "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013). Their allegations of imminent harm are particularly lacking in plausibility considering that the UHM notice—which is part of the Complaint—states that their data has *not* been misused. Furthermore, the few allegations of actual misuse (such as unauthorized bank withdrawals or credit card charges on some plaintiffs' existing accounts) are implausible since bank account and credit card information were not among the types of information potentially accessed in the breach. *See* Compl., Ex. A.[5]

### D.    Plaintiffs Do Not Have Independent Standing to Pursue Contract and Quasi-Contract Claims

Plaintiffs contend that they have suffered an injury in the form of the "lost benefit of their implied bargain for data security." Opp. 9.  This amounts to a contention that the breach of an implied contract is itself an injury-in-fact for standing purposes. But for Plaintiffs to have standing, they must allege a concrete injury beyond the breach itself. This follows clearly from *TransUnion*, which held that the violation of a statute in itself, without a concrete harm, does not confer standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-429 (2021). The same logic applies here. The fact that a party allegedly breached a contract is insufficient to confer standing absent an allegation that the breach caused some concrete harm.

Moreover, Plaintiffs do not plausibly allege that data security was a benefit of their bargain with UHM. For example, the court in *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2023 WL 6383467, at *5 (S.D. Ohio Sept. 29, 2023), rejected plaintiffs' benefit-of-the-bargain injury because the plaintiffs did not plausibly allege that data security ever formed part of the contractual bargain for vision benefits. Even though the plaintiffs alleged they would not have used EyeMed

---

[5] Plaintiffs overstate the significance of *Galaria* which is an unpublished opinion that many courts have called into question in the wake of *TransUnion*. *See, e.g., Marlin v. Associated Materials, LLC*, No. 5:23CV1621, 2024 WL 2319115, at *4 (N.D. Ohio May 22, 2024); *Brooks v. Peoples Bank*, 732 F. Supp. 3d 765, 775 (S.D. Ohio 2024); *Kingen v. Warner Norcross + Judd LLP*, No. 1:22-CV-01126, 2023 WL 11965363, at *2 (W.D. Mich. Oct. 5, 2023).

if they had known of its lax security protocols, those allegations did not show that *EyeMed* contemplated data security as part of its bargain. *Id.* The same logic applies here. The Complaint is devoid of any allegations that data security was a material term for *UHM*. *See also Polkowski v. Jack Doheny Companies*, Inc., No. 2:25-CV-10516, 2025 WL 3079358, at *4 (E.D. Mich. Nov. 4, 2025).[6]

### E.    Plaintiffs Do Not Adequately Allege a Misuse of Their Private Information

Plaintiffs assert that they suffered a concrete injury in the form of misuse of their information. Opp. 10. But the Complaint's allegations of misuse consist largely of rote and conclusory assertions that each Plaintiff's information "has already been stolen and misused as he has experienced incidents of fraud and identity theft so far in the form of having his information shared on the dark web." *See, e.g.,* Compl. ¶ 131. And allegations of unauthorized bank withdrawals and credit charges are implausible given that bank account and credit card information were not among the data potentially accessed.[7]

### F.    Plaintiffs Do Not Adequately Allege Traceability

Even if the Complaint had adequately alleged a concrete injury-in-fact, it lacks non-conclusory allegations that the injuries resulted from *this* data breach. Indeed, the Complaint contains allegations that support the proposition that Plaintiffs' data has been affected by other breaches. Compl. ¶ 113. Although the Complaint generally alleges that each Plaintiff takes efforts to keep their personal information private, the Complaint does not allege that Plaintiffs have never been the subject of a different data breach or that this is the first time they received a breach notice. Given the frequency of data breaches, Plaintiffs need to do more than simply allege that they

---

[6] Plaintiffs' citation of *Clippinger v. State Farm Auto Insurance Co.* is unavailing, as that decision was vacated by the Sixth Circuit and a rehearing *en banc* has been set. No. 24-5421, 2026 WL 234844 (6th Cir. Jan. 29, 2026).
[7] The few instances in the Complaint that contain a few more specifics are insufficient because they involve only *attempted* misuse. *See* Mot. at 9-10 & 3. Plaintiffs fail to rebut the arguments made in UHM's opening brief.

experienced alleged harm sometime after the UHM breach. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

### G.    Plaintiffs Do Not Have Standing to Seek Injunctive Relief

Plaintiffs argue that the Complaint "alleg[es] that their PII remains unprotected in Defendant's possession, subjecting Plaintiffs to a substantial risk of harm that is independent from the risk of harm posed by the already-occurring Data Breach." Opp. 13. But not one of the paragraphs of the Complaint they cite alleges any such thing. Each of those paragraphs concerns only the past data breach, the data potentially affected, and the notice UHM gave to Plaintiffs. None of those paragraphs allege any facts giving rise to a plausible inference that another breach is imminent or that that there is a substantial risk that Plaintiffs will experience the same injuries they allege that they have already suffered.

None of the cases Plaintiffs cite helps their cause. *Parsons v. U.S. Department of Justice* did not even involve a data breach; it concerned a suit by fans of a musical group challenging the DoJ's reference to the fan group as a "hybrid gang." 801 F.3d 701 (6th Cir. 2015). *Ramirez v. Paradies Shops, LLC* did not involve either standing or a request for injunctive relief, but whether the plaintiff had stated a claim for negligence. 69 F. 4th 1213 (11th Cir. 2023).

*In re Cbiz* was based on a clear misreading of *TransUnion* and should not be followed. 2025 WL 1557033 (N.D. Ohio June 2, 2025). The court in *Cbiz* said that the *TransUnion* rule that future harm must be "certainly impending" to count as an injury "does not apply…when Plaintiffs seek an injunction to prevent future harm" as opposed to damages. 2025 WL1557033 at *4.  But *TransUnion* expressly held that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm, *at least so long as the risk of harm is sufficiently imminent and substantial*." *TransUnion*, 594 U.S. at 435 (emphasis added). *See also Clapper,* 568 U.S. 398 (2013). The Complaint contains no allegations giving rise to a plausible inference that

the risk of another breach or of future harm is "certainly impending" or "imminent and substantial." Courts confronting similar deficiencies have repeatedly found that plaintiffs lacked standing to seek injunctive relief. *See, e.g., Rodriguez*, 2025 WL 2700614, at *6; *Lochridge v. Quality Temp. Servs., Inc.*, No. 22-CV-12086, 2023 WL 4303577, at *8 (E.D. Mich. June 30, 2023).

Finally, *Mercy Health* found that the plaintiffs did *not* have standing to seek an injunction requiring the defendant to employ adequate security practices because they had "not sufficiently pleaded that *another data breach* is "imminent." 2025 WL 1827804 at *7. The court did reluctantly find that the plaintiffs had standing to seek credit monitoring and theft protection, but only because they had adequately pleaded "an imminent risk of identity theft" as a result of the existing breach. *Id.* Plaintiffs here have not. *See supra* at 8-9.

Notably, UHM has already offered Plaintiffs free credit monitoring and identity theft protection for one or two years, depending on their state of residence. Compl., Ex. A. This is the length of time state laws typically require in the event of a data breach. Plaintiffs allege no facts to suggest that these state-mandated periods are inadequate to reduce the risk of identity theft. Moreover, injunctive relief is available only when a future harm is "substantial and imminent" or "certainly impending." By definition, a risk of identity theft occurring more than a year later is not imminent or certainly impending. *See, e.g., Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 676 (W.D. Ky. 2024), *amended*, No. 3:17-CV-186-CHB, 2025 WL 964446 (W.D. Ky. Mar. 31, 2025). Any harm more than a year out would depend on a "speculative chain of possibilities" and therefore cannot be "certainly impending." *Clapper*, 568 U.S. at 414.

## III.    Plaintiffs Fail To State a Claim Upon Which Relief May Be Granted

Because Plaintiffs lack Article III standing, the court need not—and may not—consider whether they have stated a claim. *Herschfus v. City of Oak Park, Michigan*, 150 F.4th 489, 497 n.5 (6th Cir. 2025) ("A court cannot rule on a claim's merits after deciding the plaintiff lacks

standing."). If the court finds Plaintiffs have standing, they have not stated a claim and the Complaint should be dismissed on that basis.

### A. Plaintiffs Fail to State a Claim for Negligence

*i. No Duty.* Plaintiffs contend that they have adequately alleged a duty. But they cannot point to any Ohio case recognizing an independent common law duty to protect personal data from a cyberattack. In fact, at least one court has found that there is no such duty in Ohio. *See Foster v. Health Recovery Servs., Inc.,* 493 F. Supp. 3d 622, 639 (S.D. Ohio 2020). In the absence of Ohio case law recognizing such a duty, this court should "decline to adopt a substantive innovation in [Ohio] law." *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 898 (N.D. Ill. 2012); *see also Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 640 (7th Cir. 2007).

Plaintiffs attempt to overcome the absence of supporting case law by arguing the fact that Ohio's legislature has created a "safe harbor" for businesses that protect personal information (Ohio Rev. Code §1354.01) must mean that covered businesses "have a duty to protect such data" under the common law. Opp. 18 (citing *Mulkey v. RoundPoint Mortg. Servicing Corp.*, 2021 WL 5804575, at *3 (N.D. Ohio Dec. 7, 2021)). But it is the province of the courts, not the legislature, to determine what the common law is. *See Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 45. Moreover, Ohio's safe harbor was adopted to create "an affirmative defense to *any* cause of action sounding in tort." Ohio Rev. Code § 1354.02(D)(1). It was not addressed specifically to negligence claims. In addition, the statute specifically disclaimed that it was creating a private right of action. *Id.* § 1354.04. To rely on the statute as a basis for creating a common law duty to protect personal data would stand the statute on its head.

Plaintiffs also argue that a special relationship should extend to anyone whose data UHM possesses, including customers, former employees, and even those who lack any relationship with UHM. Opp. 18-19. But, again, they cannot cite a single Ohio decision holding that a special

relationship exists in any of these contexts. Nor do they even attempt to distinguish the authorities UHM cited in its opening brief (Mot. 18) showing that Ohio does *not* recognize a special relationship in the situations posited by Plaintiffs.

    *ii.  No Breach of Duty.* Plaintiffs next argue that whether UHM breached any duty should be deferred "to later in the proceedings." Opp. 21. But that does not excuse Plaintiffs from Rule 8's requirement that they plead sufficient non-conclusory facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

    Plaintiffs contend that the Complaint alleges "several specific data security failures." Opp. 22. But the relevant paragraph actually asserts only that "Defendants *could* have prevented or mitigated the consequences of the Data Breach" by taking certain actions. Compl. ¶ 14 (emphasis added). It does not allege that UHM did *not* take these actions, or that these actions *would* have prevented the breach. The Complaint's bare assertion that, "[u]pon information and belief, Defendant failed to implement industry-standard security measures" is purely conclusory and therefore cannot be assumed to be true. *See, e.g., In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014); *Davis v. Anderson*, No. 3:20-CV-00250-JGC, 2021 WL 5743745, *4 (N.D. Ohio Dec. 2, 2021); *In re Bank of Am. California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 916 (S.D. Cal. 2023).

    Plaintiffs in the end must resort to asking this Court to assume some failing on UHM's part based on the fact of the data breach alone, asserting that "*the thing speaks for itself.*" Opp. 22

(citation omitted) (emphasis in original). But this is insufficient to give rise to a plausible inference that UHM breached a duty to adopt reasonable security safeguards. *See* Mot. at 19.

*iii*. *No Damages.* Plaintiffs argue that the economic loss rule does not bar their negligence claim because the rule 1) "does not apply to a loss of privacy," and 2) bars only negligence claims premised on the breach of a contract. Opp. 23. Both assertions are belied by Ohio law.

First, the Ohio Supreme Court has repeatedly held that only "physical injury, whether to person or property," is cognizable in a negligence claim. *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.,* 42 Ohio St. 3d 40, 45, 537 N.E.2d 624 (1989); *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n,* 54 Ohio St. 3d 1, 3, 560 N.E.2d 206 (1990) ("'there is no***duty to exercise reasonable care to avoid intangible economic loss *or losses to others that do not arise from tangible physical harm to persons and tangible things*.'") (citation omitted); *Corporex Dev. & Constr. Mgt, Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6. *See also Electra v. Dreamers Cabaret, LLC*, No. 5:18-CV-2706, 2019 WL 3238504, at *2 (N.D. Ohio July 18, 2019).[8]

Second, the economic loss rule does not bar negligence claims only when those claims are premised on the breach of a contract. This is a misreading of *Corporex.* Negligence is a common law claim, wherein the duty of reasonable care is "imposed by law to protect societal interests"— not by contract. *Corporex*, 2005-Ohio-5409, ¶ 6.  The court in *Corporex* discussed the difference between tort law and contract law only to explain why economic losses are not cognizable in tort law and may be sought only where there is a contract between the parties. *Id.* at ¶¶ 6, 10.  It did not hold that the economic loss rule applies only where a negligence action is somehow premised

---

[8] This Court in *Allen* held that the economic loss rule does not bar recovery for any noneconomic losses, and noneconomic loss includes any form of intangible loss. 696 F. Supp. 3d at 439 (citing *Whitaker v. M.T. Auto., Inc.*, 2006-Ohio-5481, ¶ 19, 111 Ohio St. 3d 177, 855 N.E.2d 825). But *Whitaker* did not address the economic loss rule, and did not involve a negligence claim. The court there simply defined the different types of "compensatory damages" available under the Ohio Consumer Sales Practice Act.

on the terms of a contract. To so hold would have meant reversing decades-old precedents, which it clearly did not do.

### B.    Plaintiffs Have Not Stated a Claim for Breach of Implied Contract

Plaintiffs argue that they "satisfy the element of consideration by alleging that they provided personal information as a pre-condition of receiving services and employment." Opp. 24. But this just proves UHM's point: Plaintiffs provided their information in exchange for being considered for a mortgage or for employment; UHM's mortgage and employment services were thus the consideration for Plaintiffs' provision of information. Plaintiffs offer no explanation in the Complaint or in their brief as to how data security was part of the consideration, other than their say-so. But such conclusory assertions are insufficient. *See, e.g., Tate,* 2023 WL 633467, at *8; *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1368 (S.D. Fla. 2017); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, *19 (D.N.J. Dec. 16, 2021). And Ohio courts have rejected this argument. *See, e.g., Gales v. Ohio Lottery Comm.*, 2025-Ohio-5189, ¶ 21 (Ct. of Cl.).

Moreover, the references to data security in UHM's privacy policy are of no help, as Plaintiffs concede that they did not rely on the privacy policy. Opp. 24.  Nor do they allege (or argue in their brief) that they even read the policy. Accordingly, the privacy policy statements could not have been part of the consideration that induced Plaintiffs to provide their personal information. *See, e.g.*, *Durgan v. U-Haul Int'l Inc.*, No. CV-22-01565-PHXMTL, 2023  WL 7114622, at *4 (D. Ariz. Oct. 27, 2023); *Willingham v. Glob. Payments, Inc.*, No. 1:12-CV-01157-RWS, 2013 WL 440702, *20 (N.D. Ga. Feb. 5, 2013) (collecting cases).

In addition, UHM is already required by federal law and state law to protect the security and confidentiality of non-public personal information and to provide a notice of security practices. *See* 15 U.S.C. §§ 6801, 6803 (Gramm-Leach-Bliley Act, or "GLBA"); Ohio Admin. Code Rule

1301:8-7-02(C)(2). Under Ohio law, then, the privacy policy and the security measures it refers to cannot serve as the consideration for Plaintiffs' provision of their personal information to UHM. *See, e.g.*, *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, *5 (S.D. Ohio Jan. 26, 2023); *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011); *Gales*, 2025-Ohio-5189, ¶ 21.

Plaintiffs' attempt to circumvent this bar to their contract claim fails. *Dayton Monetary Assoc. v. Becker* is not only not a data breach case, but it also had nothing to do with whether legally required practices can serve as consideration in a contract. 710 N.E.2d 1151, 1157 (Ohio Ct. App. 1998). And Plaintiffs' assertion that UHM's alleged failure "to comply with industry standards…go[es] beyond the scope of any pre-existing data is belied by the words of their own Complaint. Compl. ¶ 368 ("Defendant's inadequate security measures violated…the industry best practices that the GLBA requires for financial institutions."); *see also* Compl. ¶¶ 356-361 (referring to FTC enforcement actions for failure to employ reasonable and appropriate measures, including "industry-tested methods for security"); 16 C.F.R. § 314.4.

Finally, Ohio courts have held that privacy policy statements about the security measures a defendant uses to protect personal information are "aspirational" and "not sufficient to establish the existence of an enforceable contract." *Gales*, 2025 Ohio 5189, ¶ 22 (citing *Ullmo ex rel. Ullmo v. Gilmour Academy,* 273 F.3d 671, 676-77 (6th Cir. 2001)); s*ee also Alexander v. Columbus State Cmty. Coll.*, 2015-Ohio-2170, ¶ 20 (10th Dist.).

For similar reasons, Plaintiffs have failed to allege a meeting of the minds. Even an implied contract requires that the parties mutually assent to the same terms of that contract. Since Plaintiffs

15

do not even allege that they read the privacy policy, there could not have been a meeting of the minds that UHM would implement "industry standard" security measures.[9]

Finally, Plaintiffs' argument that they have adequately alleged mutual assent even without reference to the privacy policy, based merely on UHM's receipt of their information, runs directly counter to the basic principle of contract law that the essential terms of the agreement must be "reasonably certain and clear" for there to be a meeting of the minds. *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997). Plaintiffs' suggestion that the parties agreed that UHM agreed "to protect the information sufficiently" falls far short of identifying reasonably certain and clear terms.

### C.     Plaintiffs Fail to State a Claim for Unjust Enrichment

Plaintiffs concede that their PII was the alleged "benefit" they conferred on UHM, not any money some of them may have transferred in the form of fees or mortgage payments. Opp. 26. Yet, they do not argue that it would be unjust for UHM to retain their data. Rather, they seek a portion of UHM's "revenue and profit" that it derived from former employees' labor and customers' mortgage payments. But UHM's revenue and profit were not the benefit allegedly conferred by Plaintiffs.

Moreover, while the PII may have been necessary to process some of Plaintiffs' mortgage or employment applications, "there are no allegations that [UHM] benefited from the value of the PII, itself." *In re CBIZ Data Breach Litig.*, No. 1:24 CV 1722, 2025 WL 1557033, *11 (N.D. Ohio June 2, 2025). Therefore, Plaintiffs cannot recover the "value" of their PII because they have not alleged that UHM "benefited in that amount." *Brooks*, 732 F. Supp. 3d at 782. Further, UHM's collection of the PII "did not diminish the Plaintiffs' own access to or ability to access any inherent

---

[9] *See, e.g., Gales*, 2025-Ohio-5189 ¶¶ 20-22;  *Alexander*, 2015-Ohio-2170, ¶ 20; *Tate*, 2023 WL 6383467, at *8; *Jones v. Carrols, LLC*, 2015-Ohio-2250, ¶ 19 (9th Dist.); *In re Zappos.com, Inc., Customer Data Sec. Breach*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012); *Bracy v. Americold Logistics LLC*, No. 1:23-CV-5743-TWT, 2025 WL 552676, *6 (N.D. Ga. Feb. 19, 2025).

value in the PII." *CBIZ*, 2025 WL 1557033 at *11; *see also Brooks*, 732 F.Supp.3d at 782.
Plaintiffs do not cite any Ohio case law to the contrary.

### D.  Plaintiffs Have Not Stated a Claim Under the California Consumer Privacy Act (CCPA), and in Any Event Are Barred from Seeking Statutory Damages

Plaintiffs contend that they have satisfied the CCPA's requirement that they identify the
security practices that would have prevented the breach but which UHM did not take. Opp. 28.
But as noted above (at 12), the Complaint alleges only what UHM "could" have done. It doesn't
allege that UHM did not do these things, or that these measures *would* have prevented the breach.
Even if it had so alleged, such conclusory assertions would not be entitled to the presumption of
truth as there are no factual allegations rendering them plausible. *See, e.g. In re Bank of Am.
California Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 916 (S.D. Cal. 2023); *Razuki v.
Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, *2 (S.D. Cal. Nov.
15, 2018); *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1033 (C.D. Cal. 2024).

Even if Plaintiffs had adequately stated a CCPA claim, they plainly have not met the
CCPA's 30-day notice requirement for seeking statutory damages. Plaintiffs shrug this off, saying
that they provided "pre-suit notice" that "sufficiently placed defendant on notice" of their CCPA
claims. Opp. 29. But the Complaint contains no allegations whatsoever about Plaintiffs' supposed
notice. Moreover, Plaintiffs do not dispute that Mr. Nicholas failed to provide UHM with *any*
notice. They do not dispute that Mr. Peters mailed his notice only 13 days before Plaintiffs filed
their Complaint. And they do not dispute that Mr. Peters' notice fails to identify which specific
provisions of the CCPA were violated. Each of these concessions is fatal to Plaintiffs' request for
statutory damages. *See* Mot. 25-26; *Griffey v. Magellan Health Inc.*, No. CV-20-01282-PHX-
MTL, 2022 WL 1811165, at *6 (D. Ariz. June 1, 2022).

Finally, Plaintiffs argue that the implementation of reasonable security measures following a breach does not constitute a cure. Opp. 28. But this misses the point. Even if a plaintiff has satisfied the 30-day notice requirement, the CCPA expressly bars the plaintiff from even *initiating* an action for statutory damages if the business cures the violation and provides the consumer a written statement stating this and that no further violations shall occur, which UHM has indisputably done. *See* Mot. at 26; Cal. Civ. Code § 1798.150(b). The CCPA further provides that if it *later* turns out that the written statement is not true, a person may then "initiate an action against the business to enforce the written statement and…pursue statutory damages for each breach of the express written statement." *Id.* This makes clear that whether the alleged violations were actually cured is not to be litigated in this case, but only in a subsequent case that Plaintiffs can initiate if they believe the alleged violations were not cured. The only question for this Court is whether UHM sent a cure letter consistent with the terms of the CCPA, which it plainly did. *See In re MOVEit Customer Data Sec. Breach Litig.*, No. 23-MD-3083-ADB-PGL, 2025 WL 2179475, at *26 (D. Mass. July 31, 2025).

In addition, contrary to Plaintiffs' suggestion (Opp. 28), UHM's cure letter does not say merely that UHM instituted reasonable security measures post-breach. It recounts specific security enhancements it implemented post-breach to cure any alleged violations. Mot., Ex. 1, Langhans Decl., ¶¶ 12-13; Ex. 3, Vatis Decl., Ex. C. Courts have held that such descriptions meet the statutory requirement and have therefore dismissed requests for statutory damages. *See, e.g., In re MOVEit,* 2025 WL 2179475, at *26.[10]

---

[10] In contrast, the cure letter in *In re Eureka Casino Breach Litigation* was much less specific about the cure measures the defendant undertook, 2024 WL 4253198, at *14 (D. Nev. Sept. 19, 2024). Moreover, the court there erroneously found that a cure must address "the unauthorized release of the plaintiffs' data," not the prevention of "future threats." *Id.* In fact, the cure must address the alleged *violation* of the CCPA, not the *effects* of the violation. The alleged violation is the failure to implement reasonable security, not the fact that a breach occurred. *See, e.g., In re Waste Mgmt. Data Breach Litig.*, No. 21CV6147 (DLC), 2022 WL 561734, *7 (S.D.N.Y. Feb. 24, 2022).

### E.      Plaintiffs are Not Entitled to Declaratory or Injunctive Relief

Plaintiffs offer no argument regarding their entitlement to injunctive relief. Their request should therefore be dismissed for the reasons stated in UHM's opening brief. Mot. 28-29.

Plaintiffs also do not engage at all with the factors that courts examine to determine whether a declaratory judgment is appropriate. Mot. 27–28. Instead, they argue that if any of their substantive claims survives, so too does their duplicative declaratory judgment claim. Opp. 29. But "Courts routinely dismiss declaratory judgment claims as redundant when the declaratory judgment claim would be rendered moot by the adjudication of corresponding claims." *Vasu v. Combi Packaging Sys. LLC*, No. 5:18-CV-1889, 2020 WL 2733756, *9 (N.D. Ohio May 25, 2020) (internal quotation marks omitted).

Plaintiffs also argue that their request for declaratory relief is "intended to prevent future harm." Opp. 29. But Plaintiffs' conclusory allegation that Defendant's "data security measures remain inadequate" (Compl. at ¶ 485) is not enough to allege an "imminent threat" of another breach. *See, e.g., WCI, Inc. v. Ohio Dep't of Pub. Safety*, 475 F. Supp. 3d 770 (S.D. Ohio 2020), *aff'd*, 18 F.4th 509 (6th Cir. 2021); *Jenkins v. Associated Wholesale Grocers, Inc.*, No. 24-4039-DDC-GEB, 2025 WL 708574, at *14 (D. Kan. Mar. 5, 2025)*.

### F.      Plaintiffs Fail to State a Claim under the NCUDTPA

Plaintiffs concede that they are not claiming UHM engaged in deceptive conduct, but only that UHM's alleged failure to implement reasonable security was "unfair." Opp. 30. While the NCUDTPA is similar to the FTC Act, courts have interpreted the Act more narrowly because it provides for treble damages. First, "[a] practice is unfair if it is unethical or unscrupulous." *Dalton v. Camp,* 548 S.E. 704, 711 (N.C. 2001). Second, "*egregious or aggravating circumstances* must be alleged" to bring a claim under the Act. *Id.* (emphasis in original); *Business Cabling, Inc. v.*

19

*Yokeley*, 182 N.C. App. 657, 663 (2007) (same).[11] Moreover, aggravating circumstances must be substantial. *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989).

Plaintiffs dispute none of this. Yet, they offer no argument whatsoever as to how UHM's alleged failure to implement reasonable security measures was unethical or unscrupulous, or involved egregious or substantial aggravating circumstances. Nor could they. Nothing in the Complaint suggests anything rising to that level. *See, e.g., Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C.1993) (even an *intentional* breach of contract does not meet this standard). Moreover, Plaintiffs do not, and cannot, cite a single case in which a court found that failure to implement reasonable security measures met these standards.[12]

## IV.    Conclusion

For the foregoing reasons, and those stated in UHM's Memorandum in Support of its Motion to Dismiss, Plaintiffs claims should be dismissed with prejudice.

---

[11] "The determination as to whether an act is unfair or deceptive is a question of law for the court." *Dalton*, 548 S.E. 2d at 711.

[12] *Johnson v. Phoenix Mut. Life Ins. Co.* did not even involve a data breach. 266 S.E.2d 610 (N.C. 1980). And the court in *Capiau v. Ascendum Machinery, Inc.* offered no explanation for its decision to let a NCUDTPA claim proceed; it certainly made no finding of unethical or unscrupulous behavior, or egregious or substantial aggravating circumstance, as the issues apparently were not raised. 2024 WL 3747191, at *13 (W.D.N.C. Aug. 9, 2024).

Respectfully submitted,

*s/ Michael A. Vatis*
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
Laura E. Kogan (0087453)
Caroline R. Hamilton (0100390)
Hannah Laubach (0104600)
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  lkogan@beneschlaw.com
        chamilton@beneschlaw.com
        hlaubach@beneschlaw.com

Michael A. Vatis (*pro hac vice*)
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone:  646.593.7050
Facsimile:  646.755.3397
Email:  mvatis@beneschlaw.com

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 19, 2026, I served the foregoing upon counsel of record for all parties by filing it with the Court's electronic filing system.

*/s/ Michael A. Vatis*
Michael A. Vatis
